**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Russell L. SWARTHOUT, Defendant-**
**Appellant.**

**No. 17942.**

United States Court of Appeals
Sixth Circuit.

Jan. 22, 1970.

S. Allen Early, Jr., Detroit, Mich., for defendant-appellant.

Robert J. Grace, U. S. Atty., Detroit, Mich., for plaintiff-appellee.

Before EDWARDS, CELEBREZZE and COMBS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal from a conviction and sentence after jury trial in the United States District Court for the Eastern District of Michigan for violation of 26 U.S.C. § 7206(4) (1964). This statute prohibits concealment of property with intent to evade or defeat assessment or collection of income taxes. The appellant is a lawyer and at the time of these events was also a Municipal Judge.

This record is full of improbabilities. Not the least of these is the originating fact that one Edward Vitale, then a convict in a federal penal institution, won the Irish Sweepstakes in October of 1960. Vitale thereby acquired title to $140,000. He also acquired an undying interest on the part of the United States Internal Revenue Service for an appropriate tax on same.

Defendant-appellant represented Vitale in relation to his parole and his tax problems. The government claims he participated in a scheme for concealing some of his client's assets by investing some $20,000 of Vitale's money in a

restaurant (Herc's Snack Shack) under concealed ownership.

A chronology of events may be helpful:

In September 1960 Vitale was committed to the federal penitentiary for making false, fictitious and fraudulent statements and representations to a federal officer.

In October 1960 his wife learned that Vitale had won $140,000 in the Irish Sweepstakes.

In February or March of 1961 an attorney named Hoffiz, who had been retained by Vitale, received payment of the $140,000 Sweepstakes winnings and deposited it in a trust account in a Detroit bank. It was shortly after this deposit that Hoffiz brought Swarthout into the picture.

During the Spring of 1961 Hoffiz expended certain sums on behalf of Vitale, and collected a $15,000 fee.

In August 1961 Hoffiz turned the balance of $72,000 over to attorney Swarthout in order, according to Hoffiz, to protect the money against garnishment by Vitale's creditors and for Swarthout to handle the tax problems.

In November 1961 an IRS agent named Brown was assigned to investigate Vitale's tax matters and to secure an estimated tax return for 1961.

On April 15, 1962, Vitale was in the Springfield Medical Center when his 1961 income tax return and payment fell due.[1]

On May 21, 1962, Vitale was released on parole.

In late July and early August 1962 there were meetings between the owners of a restaurant called Herc's Snack Shack and lawyers representing some proposed purchasers. These meetings culminated in the transfer of all the shares of stock in the restaurant to one Gertrude Bolle for a consideration which

was in the neighborhood of $20,000. As to this transaction there was testimony from which the jury could have found: 1) that the consideration was supplied (or was to be supplied) by Vitale's funds; 2) that the taking of the stock in Gertrude Bolle's name was subterfuge to conceal Vitale's actual ownership; and 3) that (at a minimum) appellant Swarthout knew all about this scheme and assisted materially in its execution.

On October 9, 1962, appellant Swarthout gave IRS agent Brown Vitale's income tax return for 1961 reporting the $140,000 Sweepstakes winnings. Swarthout also gave Brown a form 433–AB purporting to show Vitale's assets. This form did not disclose any equity on Vitale's part in Herc's Snack Shack. It appears that no tax payment accompanied the forms.

On December 7, 1962, an assessment of taxes was filed pertaining to Vitale's 1961 income tax.

On December 13, 1962, appellant Swarthout filed another form 433–AB which purported to list all of Vitale's assets but which again contained no reference to Herc's Snack Shack.

Originally there were three counts in defendant-appellant Swarthout's indictment. The other two counts charged that Swarthout and Vitale had knowingly prepared and filed Statements of Financial Condition (Form 433–AB) on October 9, 1962 and December 13, 1962, which purported to show all of Vitale's assets, but which were false and fraudulent in that they did not show Vitale's investment in Herc's Snack Shack. On motion after close of the government's case, the District Judge dismissed these two counts. He did so because while there was testimony showing Vitale's investment in this restaurant, there was no testimony that he still owned his equity therein as of the dates of the two Statements of Financial Condition.

---

1. Attorney Hoffiz testified that he understood that Swarthout had procured an extension for Vitale to file his 1961 tax.

This unrebutted hearsay is not, however, essential to decision of this case.

Swarthout and Vitale had been jointly indicted, but on motion the District Judge granted severance of the trials.

▮ Under our system of justice it is not enough that evidence in a criminal case might support a finding of unethical conduct or of some violation of some law. It is essential that there be evidence from which a jury could have found the defendant guilty beyond reasonable doubt of the particular offense against the federal criminal law with which defendant has been charged.

This case went to the jury on a single-count indictment which charged the defendant as follows:

"That on or about August 14, 1962, in the Eastern District of Michigan, Southern Division, defendants RUSSELL L. SWARTHOUT and EDWARD J. VITALE did wilfully and knowingly conceal Twenty Thousand Dollars ($20,000.00) of the property of said Edward J. Vitale upon which property levy was authorized by Section 6331 of the Internal Revenue Code 1954 and said concealment was made with the intent to evade and defeat the collection of income tax assessed upon said property on or about November 30, 1962; in violation of Section 7206(4), Title 26, United States Code and Section 2, Title 18, United States Code."

Our review of this entire record convinces us that the conviction must be set aside. Accepting all of the facts favorable to the government and all of the legitimate inferences from those facts which are favorable to the government, this record does not afford proof that appellant was guilty as charged in Count I of this indictment of violating 26 U.S. C. § 7206(4) (1964).

▮ The government stated at trial that the $20,000 appellant is charged with concealing was the equity which the government asserts Vitale acquired in Herc's Snack Shack. The indictment indicates clearly (by reference to the December 7, 1962, assessment) that the intent to evade taxes as charged in Count I pertains to an intent to evade taxes due from Vitale as a result of his 1961 income.[2] The trouble with this is that the alleged acts of concealment which are the operative facts charged in Count I took place before an income tax return had been filed, before there had been any assessment of tax by the Internal Revenue Service, and before there had been any notice and demand for payment as required in 26 U.S.C. § 6331 (1964).

▮ The District Judge viewed 26 U.S.C. § 7206(4) (1964) as providing a criminal penalty for concealing assets in order to defeat collection of a tax on personal income which had not yet been the subject of either assessment or notice and demand and neglect or refusal to pay. Although the matter is not without difficulty, we feel this was error.

Section 7206(4) provides as follows:

"§ 7206. *Fraud and false statements*

"Any person who—

\*    \*    \*    \*    \*    \*

"(4) *Removal or concealment with intent to defraud.*—Removes, deposits, or conceals, or is concerned ir removing, depositing, or concealing any goods or commodities for or in respect whereof any tax is or shall be imposed, *or any property upon which levy is authorized by section 6331,* with intent to evade or defeat the assessment or collection of any tax imposed by this title; \*  \*  \* shall be guilty of a felony \*  \*  \*." 26 U.S.C. § 7206(4) (1964). (Emphasis added.)

The indictment applicable here specifically referred to concealment of property

2. Government proofs also tended to establish that Vitale owed substantial income taxes on prior years. We do not pass on whether or not the Herc's Snack Shack investment represented fraudulent concealment of property with intent to evade those taxes. The District Judge properly struck this evidence and instructed the jury to disregard proof of liability for taxes for earlier years because appellant was not indicted for any offense connected with them.

as to which "levy was authorized by § 6331."

"§ 6331. *Levy and distraint*

"(a) *Authority of Secretary or delegate.*—If any person *liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand,* it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * * " 26 U.S.C. § 6331(a) (1964). (Emphasis added.)

Section 6331, as the emphasized portions indicate, authorizes levy only after one "liable to pay" a tax "neglects or refuses" to do so after "notice and demand" by the government's agent.[3] Bershad v. Wood, 290 F.2d 714 (9th Cir. 1961); Mrizek v. Long, 187 F.Supp. 830 (N.D.Ill.1960); Code Commentary, J. Mertens, Law of Federal Income Taxation § 6331:1 (1969).

Our view in this regard is strengthened by the income tax statutes and regulations which clearly provide that notice and demand must follow assessment.

"§ 6203. *Method of assessment*

"The assessment shall·be made by recording the liability of the taxpayer in the office of the Secretary or his delegate in accordance with rules or regulations prescribed by the Secretary or his delegate. Upon request of the taxpayer, the Secretary or his delegate shall furnish the taxpayer a copy of the record of the assessment. Aug. 16, 1954, c. 736, 68A Stat. 768." 26 U.S.C. § 6203 (1964).

"§ 6303. *Notice and demand for tax*
"(a) *General rule.*—Where it is not otherwise provided by this title, the Secretary or his delegate shall, as soon as practicable, and within 60 days, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

"(b) *Assessment prior to last date for payment.*—Except where the Secretary or his delegate believes collection would be jeopardized by delay, if any tax is assessed prior to the last date prescribed for payment of such tax, payment of such tax shall not be demanded under subsection (a) until after such date. Aug. 16, 1954, c. 736, 68A Stat. 775." 26 U.S.C. § 6303 (1964).

"§ 301.6303–1 *Notice and demand for tax.*

"(a) *General rule.* Where it is not otherwise provided by the Code, the district director or the director of the regional service center shall, after the making of an assessment of a tax pursuant to section 6203, give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof. Such notice shall be given as soon as possible and within 60 days. However, the failure to give notice within 60 days does not invalidate the notice. Such notice shall be left at the dwelling or usual place of business of such person, or shall be sent by mail to such person's last known address.

"(b) *Assessment prior to last date for payment.* If any tax is assessed prior. to the last date prescribed for payment of such tax, demand that such tax be paid will not be made before such last date, except where it is believed collection would be jeopardized by delay." 26 C.F.R. § 301.6303–1 (1969).

Assessment of Vitale's 1961 income tax (as we have noted) occurred December

---

3. The code provides for speedier procedures where there is a finding that the collection of the tax is in jeopardy. This record, however, contains no such finding.

7, 1962, more than three months after the acts of concealment alleged in the indictment.

Under the statutory system established by Congress no levy was authorized under 26 U.S.C. § 6331 (1964) in August of 1962 on the $20,000 which appellant was charged with concealing in the Herc's Snack Shack transaction.

The acts of concealment of August 1962 do not provide evidence of intent to defeat collection of a tax as to which the government was not entitled to levy until December of 1962.

The legislative history of section 7206 (4) indicates that this provision resulted from amendment of § 3321(a) of the Int. Rev. Code of 1939. The previous provision related only to concealment of goods or commodities. It was amended in the Int.Rev.Code of 1954 to cover "offenses committed in order to avoid levy." H.R.Rep.No. 1337 in 3 U.S.C. Cong. & Ad. News, p. 4573 (1954). If in amending this sentence Congress had intended to make it an offense to conceal property before levy was authorized (i. e. before assessment), it knew how to do so. Congress was careful to authorize prospective effect in relation to concealing to avoid assessment or collection of taxes on "goods or commodities" by making the modifying clause as to them read "for or in respect whereof any tax is *or shall be* imposed." Thus Congress could have made the critical language involved in this section (and therefore, this indictment) read "or any property upon which levy is *or shall be* authorized by section 6331."

We decline to add the three italicized words to the statute by judicial interpretation. Criminal statutes, of course, are strictly construed. In affirming an earlier decision of this court, Acker v. Commissioner of Internal Revenue, 258 F.2d 568 (6th Cir. 1959), strictly construing a penal provision of the Int. Rev. Code, the United States Supreme Court said:

"We are here concerned with a taxing Act which imposes a penalty. The law is settled that 'penal statutes are to be construed strictly,' Federal Communications Commission v. American Broadcasting Co., 347 U.S. 284, 296, 74 S.Ct. 593, 601, 98 L.Ed. 699, and that one 'is not to be subjected to a penalty unless the words of the statute plainly impose it,' Keppel v. Tiffin Savings Bank, 197 U.S. 356, 362, 25 S.Ct. 443, 445, 49 L.Ed. 790. See *e.g.*, Tiffany v. National Bank of Missouri, 18 Wall. 409, 410, 21 L.Ed. 862; Elliott v. Railroad Co., 99 U.S. 573, 576, 25 L.Ed. 292." Commissioner of Internal Revenue v. Acker, 361 U.S. 87, 91, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959).

It might, of course, be argued that the concealment of Vitale's ownership of Herc's Snack Shack represented concealment with intent to defeat "assessment" of the 1961 tax within the meaning of § 7206(4). The answer to this is that appellant was not indicted for concealment with intent to defeat assessment. He was indicted for concealment with intent to defeat collection. Actually on this record appellant Swarthout could not have been successfully prosecuted for concealing to defeat assessment, since Vitale had filed an income tax return which fully revealed his income.

Under these circumstances the District Judge should have granted appellant's motion for acquittal at the end of the government's proofs because of insufficiency of the evidence to sustain a conviction. Fed.R.Crim.P. 29.

Our decision of this appeal rests entirely upon construction of the federal statutes referred to. We have, however, reviewed the numerous other issues which appellant has presented and find no merit in any of them.

The judgment of the District Court is vacated and the case is remanded for the entry of an order of acquittal.