**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank L. HOOK, Defendant-Appellant.**

No. 84–3815.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 1, 1985.

Decided Jan. 21, 1986.

Rehearing and Rehearing En Banc
Denied March 17, 1986.

Opinion on Denial of Rehearing
March 26, 1986.

Frank L. Hook, Columbus, Ohio, pro se.

Victoria B. Eiger, Nathan Z. Dershowitz, argued, Dershowitz & Eiger, P.C., New York City, for defendant-appellant.

Christopher Barnes, U.S. Atty., Columbus, Ohio, Robyn R. Jones, argued, Asst. U.S. Atty., for plaintiff-appellee.

Before MERRITT and WELLFORD, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Defendant-appellant Frank L. Hook appeals from his convictions of two counts of feloniously attempting to evade the payment of income taxes, in violation of I.R.C. § 7201 (1982), and four counts of willfully failing to pay income taxes, in contravention of I.R.C. § 7203 (1982). On appeal, Hook contends that the felony convictions must be set aside because he was charged under the wrong statute, that his convictions relating to the 1975 and 1976 tax years are barred by the statute of limitations, that the evidence presented at trial was insufficient to support his felony convictions, and that the trial court erred in admitting prejudicial evidence and in permitting his ex-wife to testify to acts which occurred during their marriage. After carefully reviewing each issue, we affirm.

Viewing the facts in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), Hook engaged in the following conduct to conceal assets from the Internal Revenue Service (IRS). In 1975, Hook formed a corporation whose sole assets were 10,000 shares of Wendy's International stock and two automobiles. Although the only shareholders of the corporation were his wife and daughters, the money to purchase these assets came from Hook, and in May, 1977, after the sale of the Wendy's stock, Hook received the bulk of the proceeds. Similarly, Hook purchased a home in 1977 in the name of his girlfriend, Linda Barford, who lived there for only six months. Hook himself lived there from 1979 until the summer of 1983, paid the installments on the mortgage note, made substantial improvements to the property, and obtained the proceeds from the sale of the house.

While Hook maintained no bank accounts and possessed no credit cards in his own name, he was still involved in numerous financial transactions. Without completing required currency transaction reports, Hook cashed checks, sometimes made out to fictitious payees, totalling in excess of $1.2 million through a neighborhood grocery, Linden Market, and a neighborhood branch bank. Throughout the period covered by the indictment, Hook used credit cards in the names of others to purchase heating oil, obtain car rentals, and make personal expenditures, and used automobiles titled in other persons' names. Finally, Hook employed cash to pay for everything from legal fees to swimming pools.

Hook filed timely and accurate tax returns with the IRS for the 1975 through 1980 tax years showing a total of almost $300,000 in taxes due, but paid only a few thousand dollars in satisfaction of this liability. Although the IRS made repeated demands and attached liens to Hook's property, the Government was generally unsuccessful in locating assets belonging to Hook. The Government subsequently obtained an indictment against Hook on November 16, 1983. Count I charged Frank

Hook, his ex-wife Nancy Hook, and the proprietor of Linden Market with conspiring to evade the payment of income taxes for the years 1973 through 1980. Counts II through VII charged Frank and Nancy Hook with attempting to evade the payment of income taxes for each of the tax years 1975 through 1980, in violation of Section 7201.

Frank Hook's co-defendants were severed before trial and the Government proceeded solely against him. After a lengthy jury trial, Hook was acquitted on the conspiracy count, convicted under counts III and VI of feloniously attempting to evade the payment of income taxes for the tax years 1976 and 1979, and convicted on the remaining four counts of the lesser-included misdemeanor offense of willfully failing to pay income taxes for the tax years 1975, 1977, 1978, and 1980. This appeal ensued.

Hook first argues that his two felony convictions must be reversed because he was charged and convicted under the wrong statute. This argument focuses on the interpretation of two statutes, Section 7201, which states in the pertinent part, "Any person who willfully attempts in any manner to evade or defeat any tax ... or the payment thereof shall ... be guilty of a felony...," I.R.C. § 7201 (1982), and Section 7206(4) which provides,

> *Any person who* ... [r]emoves, deposits, or *conceals* ... any goods or commodities for or in respect whereof any tax is or shall be imposed, or *any property upon which levy is authorized by Section 6331,* with intent to evade or defeat the assessment or collection of any tax ... shall be guilty of a felony ...,

I.R.C. § 7206(4) (1982) (emphasis added). Hook alleges that the Section 7201 language "attempts in any manner to evade or defeat ... the payment" of a tax does not encompass conduct which goes solely to concealing assets. According to Hook, the attempt to avoid the payment of taxes

through the concealment of assets can only be prosecuted under Section 7201 if the taxpayer also files a fraudulent return or otherwise attempts to conceal the existence or amount of taxable income. Hook buttresses this assertion by pointing out that Section 7206(4) explicitly refers to concealment and by arguing that an interpretation of Section 7201 to cover concealment would implicitly attribute irrational conduct to Congress in amending Section 7206(4) to criminalize concealment activity which would have already been provided for in Section 7201. We disagree.

■ Initially, Hook's argument that the sole act of concealing assets is not included within the purview of Section 7201 is contrary to the plain language of that statute which establishes a violation if anyone "willfully attempts *in any manner*" to evade a tax or its payment. I.R.C. § 7201 (1982) (emphasis added). The Supreme Court, in *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943), interpreted Section 7201 to subsume several affirmative acts, including "concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." The Court cautioned that its list of affirmative acts was illustrative only, and not limiting, lest it be interpreted as restricting the undefined and unlimited acts which Congress intended to criminalize under Section 7201 by the use of the "in any manner" language. *Spies,* 317 U.S. at 499, 63 S.Ct. at 368. Although *Spies* was a case involving both the non-filing of a tax return as well as non-payment of the tax, we find nothing in the case that either lends itself to the conclusion that the Court was restricting its decision to only the non-filing conduct of the taxpayer or precludes application of the Court's list of affirmative acts to cases involving the evasion of payment.[1] Accordingly, we conclude that

---

**1.** In addition to *Spies,* Hook attempted to likewise distinguish the many cases pointed to by the Government which involved prosecution under Section 7201 and the concealment of assets

by correctly noting that the cases also involved either allegations of fraudulent filing or non-filing of returns, *see, e.g., United States v. Voorhies,* 658 F.2d 710, 712 (9th Cir.1981); *Cohen v.*

Hook's argument runs contrary to both the plain language and the Supreme Court's interpretation of Section 7201.

■ Next, we do not believe that the 1954 amendment to Section 7206(4), making it an offense to conceal property on which levy is authorized as well as conceal goods or commodities on which a tax is or shall be imposed, evidences a Congressional intent that concealment of assets, as an act of tax evasion, be solely remedied by Section 7206(4). Contrary to Hook's assertions, nothing in the legislative history indicates that Congress in amending Section 7206(4) intended to limit the scope of Section 7201 or believed that the amendment was necessary to fill a gap left open by Section 7201. H.R.Rep. No. 1337, 83d Cong., 2d Sess. A425, *reprinted in* 1954 U.S.Code Cong. & Ad.News 4017, 4025, 4573; S.Rep. No. 1622, 83d Cong., 2d Sess. 603, *reprinted in* 1954 U.S. Code Cong. & Ad.News 4629, 5252. Rather, the clear import of the amendment is to preserve the property of delinquent taxpayers so that the government can collect taxes due. S.Rep. No. 1622, 83d Cong., 2d Sess. 603, *reprinted in* 1954 U.S.Code Cong. & Ad.News 4629, 5252 ("This section ... covers such offenses committed in order to avoid levy...."). Considered in this light, Congress in amending Section 7206(4) was not filling an existing gap in the law or impliedly repealing Section 7201, *see Universal Interpretive Shuttle Corp. v. Washington Metropolitan Area Transit Commission,* 393 U.S. 186, 193, 89 S.Ct. 354, 358, 21 L.Ed.2d 334 (1968) (repeals by implication

disfavored), but was merely strengthening a collection provision.

Finally, we believe that a holding that Section 7206(4) provides the exclusive remedy for concealment of assets would produce an anomalous result. This Court has held that Section 7206(4) is operative only if the acts of concealment take place after the conditions precedent of assessment, notice and demand, and neglect or refusal to pay the tax, necessary for the authorization of a levy under Section 6331,[2] have been met. *United States v. Swarthout,* 420 F.2d 831, 833 (6th Cir.1970). To adopt Hook's contention concerning the purview of Sections 7201 and 7206(4) would thus preclude felony prosecutions against those taxpayers who had the foresight to file accurate tax returns and commit acts of concealment of assets prior to assessment, notice and demand, and refusal or neglect, while permitting prosecution only of those taxpayers who wait for the IRS to act before committing their acts of concealment.[3] After carefully examining the statutes at issue, we find that concealment of assets alone can constitute an offense under Section 7201 for the evasion of payment of income taxes and, accordingly, we hold that Hook was charged under the proper statute.

■ Hook's second contention is that his Section 7201 felony conviction under count III and his conviction under count II of the lesser-included misdemeanor offense of willfully failing to pay a tax, in violation of Section 7203, are both barred by the statute of limitations. Specifically, Hook alleges that a review of the evidence and the

*United States,* 297 F.2d 760 (9th Cir.), *cert. denied,* 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962), or making false statements to the Government, *see, e.g., United States v. England,* 229 F.Supp. 493 (E.D.Ill.1964), *rev'd on other grounds,* 347 F.2d 425 (7th Cir.1965), or merely assumed that concealment comprised a Section 7201 violation on the way to determining other issues, *see, e.g., United States v. Chagra,* 754 F.2d 1181, 1182 (5th Cir.1985) (evidentiary issue); *Cohen v. United States,* 297 F.2d 760 (9th Cir.) (numerous issues), *cert. denied,* 369 U.S. 865, 82 S.Ct. 1029, 8 L.Ed.2d 84 (1962); *United States v. Shorter,* 608 F.Supp. 871 (D.D.C. 1985) (denial of motion to dismiss indictment alleged to be duplicitous); *United States v. Carpenter,* 175 F.Supp. 362 (N.D.Ga.1959) (refused to dismiss indictment alleged to lack specifici-

ty). This Court has not been directed to a case, and none could be found, which addressed the precise question posed in this appeal.

**2.** Section 6331 provides: "If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful ... to collect such tax ... by levy upon all property and rights to property ... belonging to such person...." I.R.C. § 6331 (1982).

**3.** Since Hook was prosecuted under Section 7201 and not Section 7206(4), the record on appeal is unclear as to whether the prerequisites to prosecution under Section 7206(4) were even met in the instant case.

jury instructions demonstrates that the jury found the elements of the Section 7201 and Section 7203 crimes[4] to have first appeared prior to November 16, 1977.[5] Alternatively, Hook argues that since the jury was never apprised of the statutory limitations period or asked to determine when the crimes were completed, a possibility arises that the jury may have convicted him on the basis of acts which occurred outside the limitations period, which he contends requires reversal of his count II and count III convictions.

In support of his argument that the jury determined that the elements of the Section 7201 and Section 7203 crimes first appeared prior to November 16, 1977, Hook relies upon those jury instructions which stated that the Government must prove beyond a reasonable doubt with respect to the particular count under consideration "that the offense charged occurred on or about the date alleged" in the indictment. The instructions, according to Hook, effectively directed the jury's attention to the period of time on or about the dates in the indictment which reflect the dates on which he filed the tax returns, April 15, 1976 for count II and June 6, 1977 for count III. Hook also points out that the most damaging evidence offered against him at trial consisted of the formation of the "shell" corporation and the purchase of the house in the name of Linda Barford, both of which occurred prior to November 16, 1977. Interpreting the jury instructions as a whole, *Cincinnati Fluid Power, Inc. v. Rexnord, Inc.*, 773 F.2d 92, 95 (6th Cir. 1985) (per curiam), however, we are not persuaded that the jury instructions concentrated the jury's attention on times outside the limitations period.

First, the jury charges for each count tracked the language of the indictment, which charged Hook with violating Section 7201 on or about certain dates (each of counts II through VII reciting a different date) and *"continuing up to and including the date of the indictment."* (emphasis added). Similarly, with regard to the willfulness element of Sections 7201 and 7203, the trial court instructed the jury that it was "entitled to consider any statements made and acts done or not done by Defendant, and all the facts and circumstances in evidence that may aid in the jury's determination of the state of mind of the Defendant." These instructions directed the jury's attention more to a period of time beginning with the date mentioned and ending with the date of the indictment than to the specific date recited in any of the individual counts. Furthermore, even if the jury's attention was directed to the specific dates contained in counts II and III of the indictment, we find nothing which impressed upon the jury any requirement that it find all of the elements of the crimes to have occurred on or about the dates alleged.[6] Next, massive amounts of evidence and testimony concerning conduct by Hook to conceal assets was presented in this case with little apparent attempt to relate specific acts to specific counts in the indictment, let alone to specific dates within the various counts. The indictment, although reciting forty-three overt acts under the conspiracy count, provided no lists of acts to which the jury could refer in rendering the verdicts under counts II through VII, and nothing has been brought to our attention, apart from some income and expenditures evidence, which indicates that either the Government or Hook attempted to limit the jury's consideration of the evidence to particular periods of time. Last, although we recognize that what appears to be the most damaging evidence against Hook was conduct which occurred outside the limitations period, other evidence showed numerous acts by Hook occurring within the limitations period which could have been employed by the jury to

---

**4.** The three elements of a Section 7201 violation are a tax deficiency, willfulness, and an affirmative act constituting an evasion or attempted evasion of the tax. *Sansone v. United States,* 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965). The affirmative act requirement distinguishes this felony from the Section 7203 misdemeanor offense. *Spies v. United States,* 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

**5.** The statute of limitations applicable to both Sections 7201 and 7203 is six years. *See* I.R.C. § 6531 (1982). Since the indictment was returned on November 16, 1983, the crimes contemplated by Hook's count II and count III convictions must have occurred after November 16, 1977 to be within the limitations period.

**6.** *See infra* footnote 9.

conclude that the Section 7201 and Section 7203 crimes for which Hook was convicted were not complete until after November 16, 1977.

█ Based upon the foregoing, we cannot say that the jury instructions and evidence in this case were sufficient to concentrate the jury's attention on the April 15, 1976 and June 6, 1977 dates suggested by Hook. Accordingly, we reject Hook's argument that the jury instructions, in this case, required the jury to find Hook guilty based upon acts which occurred outside of the limitations period.

█ In the alternative, Hook maintains that a review of the jury instructions and evidence clearly indicates that a possibility exists that he was convicted under counts II and III on the basis of evidence wholly outside the statute of limitations period. According to Hook, this possibility alone warrants reversal.[7] Since this possibility only arose because the jury was not instructed regarding the applicable limitations period or asked to determine when the crimes under counts II and III were completed, Hook's argument is really an objection to the trial court's omission of jury instructions on these matters. Hence,

we consider the adequacy of the jury charges.

█ Since Hook failed to object to the jury instructions at trial,[8] *see* Fed.R. Crim.P. 30, reversal is only required in this case if the omission of jury instructions constituted "plain error." Fed.R.Crim.P. 52(b). The Supreme Court and numerous federal courts have repeatedly stated that the plain error doctrine is to be used sparingly, *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982); *United States v. Byers*, 740 F.2d 1104, 1126–27 & n. 22 (D.C.Cir.1984) (citing cases), only in exceptional circumstances, *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *Byers*, 740 F.2d at 1127 & n. 23 (citing cases); *United States v. Rudinsky*, 439 F.2d 1074, 1076 (6th Cir. 1971), and solely to avoid a miscarriage of justice, *Frady*, 456 U.S. at 163 & n. 14, 102 S.Ct. at 1592 & n. 14; *Rudinsky*, 439 F.2d at 1076. Recourse may be had to the doctrine "only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." *Frady*, 456 U.S. at 163, 102 S.Ct. at 1592. Moreover, an improper jury instruction will rarely justify reversal of a crimi-

7. At oral argument, Hook relied upon *Robinson v. California*, 370 U.S. 660, 665, 82 S.Ct. 1417, 1419–20, 8 L.Ed.2d 758 (1962), for the proposition that reversal is required if a jury could have based its conviction on either a permissible or impermissible ground and it is impossible to tell from the verdict upon which ground the jury relied. Although numerous other cases can be cited for this proposition, notably *Stromberg v. California*, 283 U.S. 359, 367–68, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931), the proposition is inapplicable to the case at bar. Two rules have been derived from the *Stromberg* line of cases. One rule requires "that a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground," and the other requires reversal when a "general verdict on a single-count indictment or information rest[s] on *both* a constitutional and an unconstitutional ground." *Zant v. Stephens*, 462 U.S. 862, 881–82, 103 S.Ct. 2733, 2745–46, 77 L.Ed.2d 235 (1983) (emphasis in original). Neither of these rules was violated in the present case: alternative independent grounds were not presented to the jury and Hook does not claim that the jury's general verdict rested upon both constitutional and unconstitutional grounds.

8. Hook has attempted to excuse his failure to raise the statute of limitations matter at the jury instruction stage of trial by pointing out that the district court, in a pre-trial motion for dismissal made by Nancy Hook before her severance, held that the statute of limitations began when the last affirmative act was completed. The enunciation of the trial court's position in denying Nancy Hook's pre-trial motion, however, did not excuse Frank Hook from objecting to the jury instructions as given or requesting instructions clarifying the statute of limitations matter for the jury, thereby avoiding the problem of which he now complains. A trial counsel is responsible for requesting appropriate jury instructions and objecting to erroneous ones. Objections to jury instructions are necessary to afford the trial judge the opportunity to correct mistakes in his charge. *See, e.g., United States v. Hamilton*, 684 F.2d 380, 385 (6th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 312, 74 L.Ed.2d 291 (1982); *United States v. Parisien*, 574 F.2d 974, 976 (8th Cir.) (per curiam), *cert. denied*, 439 U.S. 850, 99 S.Ct. 154, 58 L.Ed.2d 154 (1978). Trial counsel, as well as the court, is expected to know the law of the case he is trying. *See Sica v. United States*, 325 F.2d 831, 836 (9th Cir. 1963), *cert. denied*, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 972 (1964).

nal conviction when no objection has been made at trial, *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–37, 52 L.Ed.2d 203 (1977), and an omitted or incomplete instruction is even less likely to justify reversal, since such an instruction is not as prejudicial as a misstatement of the law, *Kibbe*, 431 U.S. at 155, 97 S.Ct. at 1737.

 Judged by these standards, no plain error occurred with regard to the jury charges. Hook argued at trial that the statute of limitations began to run when his tax returns were filed or when the returns were due, whichever was later. The Government has argued at trial, and on appeal, that the statute begins to run when the last affirmative act constituting the crime of tax evasion or willful non-payment is completed. The trial court appears to have operated at trial under the Government's theory but denied Hook's motion for acquittal while announcing the view, accepted by Hook on appeal, that the limitation period begins when the elements of the crime first appear.[9] Given the total lack of agreement and the uncertainty that appar-

ently existed at trial over the very operation of the statute of limitations in this case, we cannot say that the failure of the district court to give jury instructions concerning the statute of limitations was an error so obvious that it constituted plain error. Furthermore, the trial court's alleged error was an act of omission, not commission; the lower court did not misstate the law or direct the jury to convict Hook even if it found the crimes to have been completed before the limitations period. The omission of statute of limitations instructions merely created a situation in which the jury could have convicted Hook while finding that the crimes occurred before November 16, 1977, a possibility we find too speculative to require reversal based on plain error. *See Kibbe*, 431 U.S. at 157, 97 S.Ct. at 1738; *Continental Baking Co. v. United States*, 281 F.2d 137, 155 (6th Cir.1960). Since we cannot find reversible error in the jury instructions, we hold that Hook's convictions are not barred by the statute of limitations.[10]

 In light of the foregoing,[11] the judgment of the district court is affirmed.

9. Since Hook has accepted the district court's post-verdict determination concerning the running of the limitations period and his argument that the convictions are time-barred fails even if we also accept, for purposes of this appeal, that the limitations period begins to run on these crimes when the elements first appear, we express no opinion concerning the Government's notion that evasion of taxes by non-payment and concealment of assets constitutes a continuing offense for which, much like a conspiracy, the statute of limitations begins to run with the last affirmative act in furtherance of the crime.

10. Due to our disposition of this case, it was unnecessary for us to consider, and we express no opinion concerning, the precedential value of *Benes v. United States*, 276 F.2d 99 (6th Cir. 1960), which presumably stands for the proposition that a statute of limitations acts as a non-waivable jurisdictional bar. An obvious consequence of our holding, however, is to place on the defendant the responsibility of clarifying statute of limitations matters for the jury in order to avoid the possibility of convictions for what may be time-barred crimes or, at least, of making a timely objection to incomplete or erroneous jury charges on the subject. We do not believe this is an unduly harsh or burdensome requirement to place on a criminal defendant in light of the fact that some circuits have held that criminal statutes of limitation are affirmative defenses which are waived if not raised at trial.

*United States v. Meeker*, 701 F.2d 685, 687–88 (7th Cir.) (citing cases), *cert. denied*, 464 U.S. 826, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). Our holding also reduces the possibility that a criminal defendant will rely on ambiguous or incomplete jury instructions regarding the statute of limitations and appeal only if the jury verdict is adverse. *See Industrial Development Board of the Town of Section, Alabama v. Fuqua Industries, Inc.*, 523 F.2d 1226, 1238 (5th Cir.1975).

11. Hook makes three additional challenges to his convictions. After carefully reviewing these contentions, we find each to be without merit. First, we reject Hook's allegation that the evidence at trial was insufficient to support his felony convictions. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984). Next, we find Hook's contention that the trial court abused its discretion by admitting prejudicial evidence in violation of Rule 403 of the Federal Rules of Evidence to be without merit. *See United States v. Brady*, 595 F.2d 359, 361 (6th Cir.), *cert. denied*, 444 U.S. 862, 100 S.Ct. 129, 62 L.Ed.2d 84 (1979); *United States v. Jenkins*, 525 F.2d 819, 824 (6th Cir. 1975) (per curiam). Finally, we reject Hook's contention that acts of giving his wife money to pay household bills were communicative acts protected by the federal common law privilege for confidential marital communications. *See United States v. Robinson*, 763 F.2d 778, 783 (6th Cir.1985).

**1174**

MERRITT, Circuit Judge, dissenting.

The government's theory in this criminal tax case is that although the defendant filed timely nonfraudulent personal income tax returns for the six calendar years from 1975 through 1980, he is guilty of the felony of evading *payment* of the taxes due for each of those years through affirmative acts of concealment of assets in violation of section 7201, as well as committing the lesser included misdemeanor of willfully failing to pay taxes in violation of section 7203. The jury convicted him of the section 7201 felony offenses for the years 1976 and 1979 and of the section 7203 misdemeanor offenses for 1975, 1977, 1978 and 1980. Thus, the jury found him guilty of affirmative acts of concealment in only two of the years. It convicted him of wrongful failure to pay for the other four years.

Since the statute of limitations is six years, 26 U.S.C. § 6531, and the indictment was not filed until November 13, 1983 (making the cutoff date November 13, 1977), the government has a statute of limitations problem for the years 1975 and 1976. This statute of limitations problem arises for these years because, under the general rule, the statute begins to run on the date the offense is first committed, *i.e.*, whenever acts of affirmative concealment or willful nonpayment occur after the April 15 due date. The government's problem is that is claimed, and proof strongly suggested, that the acts of concealment and willfulness triggering the running of the statute for the 1975 and 1976 tax years occurred prior to November 1977.

In order to extricate itself from this dilemma the government adopted a "continuing offense" theory. Since its proof suggested that the acts of concealment and willfulness continued up until the date of the indictment in 1983, the government argued that the statute was tolled during the period of continuation and that the limitations period accrued and began to run only upon the occurrence of the last of the acts of concealment or willfulness committed in connection with the continuing offenses.

The government and the defendant agree that the District Court adopted this "continuing offense" position before and throughout the trial and kept the years 1975 and 1976 in the case. In its February 27, 1984, pretrial Memorandum and Order denying motions to dismiss, the District Court stated that: "the six-year limitations period imposed by 26 U.S.C. § 6531(2) for evasion of the payment of taxes runs from the last affirmative act constituting the attempt to evade payment."

Upon motion for acquittal, after the jury convicted the defendant for these two years, the District Court found the continuing offense theory inapplicable. But the Court refused to set the verdicts aside. It did not conclude that the defendant had waived the statute of limitations. It reached the conclusion on the merits (accepted as sound by the majority here) that the statute had not run on the 1975 and 1976 counts because "there was sufficient evidence to support a finding that all elements of the [1975 and 1976] offenses upon which defendant was convicted came into existence some time after the commencement of the six year limitations period." (App.56.) Or, in the words of the majority, wrongful acts after November, 1977 "could have been employed by the jury to conclude" that the statute did not begin to run earlier. (*Supra* p. 1172.) I believe that both the government and the defendant are correct in their contention that the 1975 and 1976 offenses were committed, if at all, earlier than November, 1977 and hence that the statute has run against those two counts.

Both the government and the defendant disagree with the approach to the problem taken by the District Court and now by our Court. The government, adhering to its continuing offense tolling argument, contends that the District Court "reached the right result for the wrong reason." The defendant argues on this point as follows:

This approach, however, which would have been appropriate if the limitations questions had been put to the jury, was not appropriate where the jury was not advised that the date of any of the events in issue was of any moment. The jurors were never asked to determine when the defendant's conduct became willful or when the affirmative act of evasion occurred. And there is no reason to assume that they made determinations which they were never instructed to make.

Appellant's Brief, p. 32.

The defendant's argument on this point seems correct. The jury was not asked to decide facts regarding the running of the statute of limitations because the parties thought that the court had adopted the government's continuing offense theory. The jury did not explicitly or implicitly find any facts relevant to this issue. Again, it should be emphasized that neither side asked for jury instructions on this issue, apparently because they thought the District Court had adopted the government's continuing offense theory. It is difficult for me to see how under these circumstances the defendant should be held to have waived the statute by not asking for jury instructions.[1]

It seems to me then that the question becomes whether the government is correct in its continuing offense argument; namely, that the "statute begins to run from the last affirmative act of evasion." Government's brief, pp. 29–30.

The Supreme Court set out the governing considerations on this issue in *Toussie v. United States*, 397 U.S. 112, 114–15, 90 S.Ct. 858, 859–60, 25 L.Ed.2d 156 (1970). We must find that "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 115, 90 S.Ct. at 860.

The language of sections 7201 and 7203 does not compel such a conclusion. It seems more consistent with Congressional intent and good policy in tax cases to run the statute of limitations from the date of the commission of the offense, as the traditional rule requires, rather than the date of the last act related to the offense. Otherwise acts of concealment of assets or willfulness committed decades after the first wrongful tax acts would revive or extend criminal liability.

The Supreme Court has, on several occasions, reaffirmed "the principle that criminal limitations statutes are 'to be liberally interpreted in favor of repose.'" It has also said that "[s]tatutes of limitations normally begin to run when the crime is complete." *Toussie*, at 115, 90 S.Ct. at 860.

Therefore, I would hold that the statute had run on the years 1975 and 1976 and that these counts should have been dismissed. The remaining question is whether we should simply knock out the counts relating to these years and affirm the other convictions, or remand for a new trial on the other counts. The majority opinion points out that:

> [M]assive amounts of evidence and testimony concerning conduct by Hook to conceal assets was presented in this case with little apparent attempt to relate specific acts to specific counts in the indictment, let alone to specific dates within the various counts. The indictment, although reciting forty-three overt acts under the conspiracy count, provided no lists of acts to which the jury could refer in rendering the verdicts under counts II through VII, and nothing has been brought to our attention, apart from some income and expenditures evidence, which indicates that either the Government or Hook attempted to limit the jury's consideration of the evidence to particular periods of time.

Op. at 1171 – 1172.

I assume from this statement that the majority, had it decided otherwise on the limitations question, would have concluded that a remand for a new trial is necessary so that the case can be restructured for presentation to the jury. Although the evidence on the other counts of the indictment is strong and presents a record unsympathetic to the defendant, I am unable to say that the errors discussed above were harmless under Rule 52, Fed.R.Crim.P.

"WELLFORD, J., CONCURRING in the denial of rehearing: To my knowledge, Mr. Dershowitz has never appeared before me and has never been involved in any proceedings before me in my fifteen years as a District Judge or as a Circuit Judge prior to this case. I have no recollection of

---

**1.** If it is true that the defendant's lawyer waived a good statute of limitations defense, then I do not see why he would not win a § 2255 case for ineffective assistance of counsel. The waiver was highly prejudicial, causing the defendant to be convicted of at least two offenses for which he should have been exonerated. I think it would be much better to come to grips with the problem now and order a new trial rather than to deal with it later in a post conviction proceeding.

having previously read his published criticism about my part in a trial which took place some ten years ago in Memphis, but it is clear that Mr. Dershowitz was not then involved in any way in that jury trial.

"Mr. Dershowitz himself acknowledges that he did not request my recusal at the oral hearing and made no suggestion whatever about any alleged problem with my participating until after the decision in this case, adverse to his client, was filed. He acknowledges that his contention now made in a petition for rehearing "may seem belated." (Appellant's Petition, p.6). Mr. Dershowitz states that at the time of the argument he "did not even know precisely what it is that he had previously written." (Petition, pp. 4–5). If Mr. Dershowitz did not know what he wrote, then I knew even less than he since I do not recall having read the article. (I was aware that Mr. Dershowitz had participated in a number of first amendment cases and that he has publicly expressed strong views with respect to pornography prosecutions, but this had absolutely nothing to do with the case at hand.)

"Mr. Dershowitz makes reference to 28 U.S.C. § 455. During the consideration of and decision in this case, I had no notion that my impartiality right was questioned by the defendant, Mr. Hook, or by his counsel, and I perceived no appearance of impartiality. I entertained then and entertain now no personal bias or prejudice against that defendant nor against Mr. Dershowitz, an able advocate who has represented his client well in this case. I am aware of no potential conflict of interest in any respect, nor of any relationship that would make it improper for me to serve as judge in this case.

I regret Mr. Dershowitz' attitude about my participation and what I sincerely believe to be his unwarranted and uncalled for inferences about me as set out in his petition."