52 F.3d 326
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronnie HUDSON, Defendant-Appellant.
 No. 93-2601.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1995.
 
 Before: NELSON, NORRIS and DAUGHTREY, Circuit Judges.
 OPINION
 PER CURIAM.
 
 
 1
 Defendant, Ronnie Hudson, appeals from numerous convictions for activities related to an extensive prostitution enterprise that he operated in Detroit, Michigan.
 
 
 2
 For the reasons stated below, we affirm defendant's convictions and sentence.
 
 I.
 
 3
 In December 1992, a grand jury returned a superseding twenty-six count indictment charging that, from 1982 through 1991, defendant and three codefendants violated the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-68, by engaging in racketeering activities stemming from a prostitution enterprise and a parallel RICO conspiracy. The indictment also charged defendant with numerous financial, firearm, and tax evasion offenses. The indictment alleged twenty-seven separate racketeering acts, including multiple prostitution-related offenses, violent acts against the prostitutes, and financial crimes. Defendant pleaded guilty to the tax offenses, but stood trial on the remaining charges.
 
 
 4
 At trial, the government presented extensive evidence that defendant ran a well-organized prostitution enterprise with the assistance of his senior prostitutes. He provided them with housing and living expenses in return for all of their prostitution revenue. According to government witnesses, defendant recruited girls as young as fifteen, whom he turned over to the more experienced women for training. His business was lucrative, generating up to $5000 a day.
 
 
 5
 The government portrayed defendant as a brutal and manipulative leader who maintained control over the prostitutes through a combination of fear, romantic attraction, emotional dependency, and expensive gifts. If a woman threatened to leave the fold or failed to produce enough revenue, he would often respond violently. The government's evidence established that defendant frequently beat and tortured the women under his control, inflicting severe injuries. On one occasion, upon learning that one of his prostitutes had become romantically involved with another man, defendant shot her in the head. He also threatened to kill the women or their families if they ever left him.
 
 
 6
 The jury convicted defendant of RICO in violation of 18 U.S.C. Sec. 1962(c), RICO conspiracy in violation of 18 U.S.C. Sec. 1962(d), nine counts of structuring cash transactions to avoid reporting requirements in violation of 31 U.S.C. Sec. 5324, one count of transporting money to Canada without reporting it in violation of 31 U.S.C. Secs. 5316 & 5322, and one firearms charge. By a special verdict form, the jury found that defendant committed ten predicate acts--the nine structuring offenses[1] and one act of aiding and abetting interstate travel for the purpose of prostitution. The jury did not find that defendant committed any other prostitution-related racketeering act, or any of the racketeering acts of violence.
 
 
 7
 In sentencing defendant, the district court found that the government proved all the counts and acts alleged in the indictment by a preponderance of the evidence. Thus, the court considered all of these crimes in determining the sentence, and imposed the maximum penalty authorized by RICO, twenty years in prison. This sentence included an eighty-nine month upward adjustment from the Sentencing Guidelines range.
 
 II.
 
 8
 A. Adequacy of the Jury Instructions and Sufficiency of the Evidence
 
 
 9
 To establish a violation of RICO, 18 U.S.C. Sec. 1962(c), the government must prove that (1) the defendant engaged in an enterprise; (2) the enterprise affected interstate commerce; (3) the enterprise's affairs were conducted through a pattern of racketeering activity; and (4) the conduct of those affairs involved two or more of the racketeering offenses set forth in the statute. United States v. Qaoud, 777 F.2d 1105, 1114 (6th Cir.1985), cert. denied, 475 U.S. 1098 (1986). An enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," and a pattern of racketeering activity is a "a series of criminal acts as defined by the statute." United States v. Turkette, 452 U.S. 576, 583 (1981). The enterprise is "an entity separate and apart from the pattern of activity ... [and] [t]he existence of an enterprise at all times remains a separate element which must be proved by the Government." Id.
 
 
 10
 Defendant first argues that the district court erred by instructing the jury that the government could prove the pattern of the racketeering activity and the existence of the enterprise with the same evidence. This court has unambiguously stated, "Although 'enterprise' and 'pattern of racketeering activity' are separate elements, they may be proved by the same evidence." Qaoud, 777 F.2d at 1115. The court's instruction was a correct statement of the law.
 
 
 11
 Defendant next contends that the government failed to present sufficient evidence to establish either the substantive RICO charge or the RICO conspiracy charge. In assessing the sufficiency of the evidence, this court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 12
 Defendant first argues that the government failed to prove the existence of an enterprise separate and distinct from the pattern of racketeering activity or defendant himself. The heart of his argument seems to rest on the fact that the jury found him not guilty of all the prostitution-related predicate acts with the exception of act eleven, aiding and abetting one act of interstate travel for the purpose of prostitution. Defendant contends that these findings establish that the government did not prove the existence of a prostitution ring, and thus failed to meet its burden of proving the existence of an enterprise.
 
 
 13
 This argument has no merit. The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by proof that the various associates function as a continuing unit." Turkette, 452 U.S. at 583. The government met its burden here. Overwhelming evidence in the record establishes the existence of an ongoing prostitution organization under defendant's control. Defendant supervised the prostitutes, obtained residences in which they lived, collected prostitution proceeds, doled out living expenses, and enforced discipline. Two senior prostitutes, codefendants Darlene Court and Rose Wilkinson, managed the residences where the prostitutes lived, maintaining security, scheduling appointments, and providing transportation. Experienced prostitutes helped recruit and train new prostitutes.
 
 
 14
 Defendant next argues that the racketeering acts which the jury found him to have committed were not related to the alleged prostitution enterprise. He contends that the financial structuring acts were for his own personal benefit and had nothing to do with any enterprise. Defendant's argument is unpersuasive. He does not challenge the government's assertion that prostitutes lived in the homes that he purchased through the structuring transactions. Rose Wilkinson, who had a substantial role in running the prostitution ring, also was heavily involved in the structuring activity. Finally, the jury could reasonably have inferred that one of defendant's purposes in structuring the transactions was to avoid an IRS investigation which might lead to discovery of the prostitution ring. Although the government never presented "smoking gun" evidence of defendant's purpose, the jury is allowed to "draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319. Defendant argued to the jury that he committed the structuring offenses for his own personal benefit, not the benefit of the prostitution ring. The jury chose to believe that he was structuring the transactions to further the goals of the enterprise. The record contains sufficient evidence to support this finding.
 
 
 15
 Although defendant's argument is somewhat unclear, he also seems to contend that the government failed to prove his acts constituted a pattern of racketeering activity as defined in H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989). There, the Court held that "to prove a pattern of racketeering activity a ... prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." Id. at 239. Contrary to defendant's argument, the government satisfied its burden of proving both these elements.
 
 B. Manufactured Jurisdiction
 
 16
 Defendant argues that the court erred in denying his motion to dismiss Count 20 of the indictment, which charged him with violating 31 U.S.C. Secs. 5316 and 5322 by knowingly transporting over $10,000 out of the United States without filing the report which United States law requires. He contends that the government improperly manufactured federal jurisdiction in that federal agents posing as money launderers proposed the idea of taking the money across the border and actually transported the money.
 
 
 17
 Defendant's argument lacks merit. Although an agent suggested that opening a Canadian account would be an effective way to launder money, defendant readily agreed to the scheme. He knew that his money would be transported out of the country. When the agent asked him if he should fill out the necessary forms, defendant responded, "no, no, hell no." The international element of the crime was entirely foreseeable to defendant from the beginning. As one court has recognized, the manufactured jurisdiction defense fails where "[t]he government merely afforded the opportunity, and the defendant chose to seize it." United States v. Peters, 952 F.2d 960, 963 (7th Cir.) (internal quotation marks and citation omitted), cert. denied, 503 U.S. 911 (1992).
 
 
 18
 C. Jury Instructions Regarding The Structuring Offenses
 
 
 19
 Defendant argues that the trial court's jury instruction regarding the structuring offenses was inconsistent with the Supreme Court's decision in Ratzlaf v. United States, 114 S.Ct. 655 (1994), which was issued subsequent to his convictions. On this basis, defendant seeks reversal of all of his structuring convictions, his RICO conviction, and his RICO conspiracy conviction.
 
 
 20
 Federal law requires banks and other financial institutions to report all transactions involving over $10,000 in cash. 31 U.S.C. Sec. 5313. It is illegal to structure cash transactions to avoid the reporting requirements. 31 U.S.C. Sec. 5324. Persons "willfully violating" the antistructuring provisions are subject to criminal penalties. 31 U.S.C. Sec. 5322.
 
 
 21
 Defendant was convicted of "willfully violating" 31 U.S.C. Sec. 5324 by breaking up cash transactions over $10,000 into smaller transactions which would not trigger the reporting requirements. The trial court instructed the jury that in order to find defendant guilty of this offense it must conclude beyond a reasonable doubt that (1) defendant knew the financial institution was legally obligated to report cash transactions exceeding $10,000, and (2) defendant sought to structure his transactions to avoid this reporting requirement. It is undisputed that this instruction accurately stated the elements of the offense as defined by this court prior to defendant's trial. Defendant neither offered an alternative instruction nor objected to the court's instruction. After his trial, however, the Supreme Court held that to convict for illegal structuring, the government must prove that a defendant "knew the structuring he undertook was unlawful." Ratzlaf, 114 S.Ct. at 658.
 
 
 22
 Defendant concedes that because of his failure to object below, this court reviews the jury charge for plain error. Federal Rule of Criminal Procedure 52(b) governs our plain error review. United States v. Olano, 113 S.Ct. 1770, 1776 (1993). Rule 52(b) provides, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." (Emphasis added).
 
 
 23
 Rule 52(b) vests appellate courts with discretion to notice plain error. "If the forfeited error is 'plain' and 'affect[s] substantial rights,' the Court of Appeals has authority to order correction, but is not required to do so." Olano, 113 S.Ct. at 1779. In exercising its discretion, "[t]he Court of Appeals should correct a plain forfeited error affecting substantial rights if the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " Id. (citing United States v. Atkinson, 297 U.S. 157 (1936)). See also United States v. Thomas, 11 F.3d 620, 630 (6th Cir.1993) (if court finds plain error affecting substantial rights, it "must then consider whether to exercise [its] discretionary power under Rule 52(b)...."), cert. denied, 114 S.Ct. 1570 (1994).
 
 
 24
 Ordinarily, the omission of an essential element of an offense from the jury instruction compromises the fairness and integrity of a criminal trial. See, e.g., United States v. Nelson, 27 F.3d 199, 202 (6th Cir.1994) (reversing conviction on these grounds). On the particular facts of this case, however, we do not find the instructional error to have seriously affected the fairness, integrity or public reputation of the proceedings below. Thus, we decline to exercise our "remedial discretion" here. Olano, 113 S.Ct. at 1779.
 
 
 25
 We recognize that in United States v. Bencs, 28 F.3d 555, 564 (6th Cir.1994), cert. denied, 115 S.Ct. 915 (1995), a panel of this court exercised its discretion to recognize plain error, in reliance upon Ratzlaf. But in that case, the instruction to which Bencs failed to object specifically told the jury that the government need not prove that Bencs knew that his structuring of the transaction was against the law. Furthermore, many characteristics of this case distinguish it from Bencs.
 
 
 26
 A number of considerations lead us to conclude that reversal for plain error is unwarranted here. First, overwhelming evidence in the record establishes that defendant was well aware that his structuring activities were illegal. He sought to distance himself from the transactions by having other people purchase most of the cashier's checks. He broke the transactions into smaller amounts than necessary to avoid the reporting requirements, in an apparent effort to conceal his activity. Defendant also told undercover agents that he sought a way to launder his money without having to use cashier's checks, and expressed concern that his name appeared as payee on the cashier's checks. This compelling evidence assuages any concerns that the district court's failure to instruct on this point resulted in the conviction of an innocent man. See United States v. Marder, --- F.3d ----, 1995 WL 34072 (1st Cir.) (affirming structuring conviction despite failure of district court to give knowledge of illegality instruction because, inter alia, "any claim of lack of knowledge of the illegality of structuring tends to be belied by defendant's conduct"), cert. denied, 1995 WL 105711 (1995).
 
 
 27
 Second, the instruction at issue here was silent about whether the prosecution had to prove defendant knew his conduct was illegal. By contrast, the district court in Bencs explicitly instructed the jury that the prosecution did not have to prove such knowledge. Bencs, 28 F.3d at 564. It is well-established that "an improper jury instruction will rarely justify reversal of a criminal conviction when no objection has been made at trial, ... and an omitted or incomplete instruction is even less likely to justify reversal, since such instruction is not as prejudicial as a misstatement of the law." United States v. Hook, 781 F.2d 1166, 1172-73 (6th Cir.) (citations omitted), cert. denied, 479 U.S. 882 (1986). In addition, here the government never argued to the jury that it did not have to prove defendant knew his conduct was illegal.
 
 
 28
 Finally, defendant's trial attorney failed to object to the court's instruction or offer an alternative. Cf., Bencs, 28 F.3d at 564 (although defendant failed to object, he did request an instruction imposing a knowledge of illegality requirement). Although the court's instruction complied with the settled law of this court, the Supreme Court granted certiorari in Ratzlaf several months before defendant's trial. Indeed, defendant concedes that the grant of certiorari was widely reported in legal publications and the mainstream media.
 
 D. Sentencing
 
 29
 At defendant's sentencing hearing, the district court found, "by more than a preponderance of the evidence, that [defendant] committed the acts as alleged in Count 1 [RICO], and that he committed the overt acts as alleged in Count 2 [RICO conspiracy]." The court then used those crimes in calculating defendant's base offense level. Defendant contends that the district court should not have considered this acquitted conduct because it had no relationship to the offense of conviction, as required by Sec. 1B1.3 of the United States Sentencing Guidelines, which governs relevant conduct.
 
 
 30
 Defendant's argument is without merit. The government presented substantial evidence that the conduct at issue here, which includes various prostitution-related offenses and the brutal beating and torturing of numerous women, was related to defendant's operation of a prostitution ring, the RICO enterprise. Thus, the trial court could have rationally concluded that all of the conduct which it considered "occurred during the commission of the offense of conviction." U.S.S.G. Sec. 1B1.3.
 
 
 31
 According to the presentence report, defendant received two criminal history points for a prior conviction and two criminal history points for committing the instant offense less than two years after his release from custody. Defendant contends that the trial court improperly double counted offense conduct by using the same conduct to determine his criminal history category and to determine the base offense level. This argument has no merit. The Sentencing Guidelines expressly require a two-point addition to the criminal history level "if the defendant committed the instant offense less than two years after release from imprisonment." U.S.S.G. Sec. 4A1.1. Defendant presents no authority indicating that this guideline provision is unconstitutional or otherwise invalid.
 
 
 32
 Defendant also contends that the trial court double counted offense conduct in that it considered the racketeering acts alleged in Counts 1 and 2 in setting the base offense level and again in imposing an upward departure. The court found that defendant had caused significant physical injury, discharged a firearm during his offense, and engaged in "unusually, heinous, cruel or degrading conduct." As a result of these findings, the court concluded that "it could depart upward eleven levels," a departure which would have raised defendant's base offense level to 41 and resulted in a sentence range of 360 months to life. RICO, however, authorizes a maximum sentence of twenty years, which is what the court imposed.
 
 
 33
 Defendant's double counting argument has no merit. He again fails to cite any authority suggesting that the court's straightforward application of the Sentencing Guidelines is impermissible. In addition, his argument is meritless to the extent he is arguing that the court's upward departure was unreasonable. Substantial evidence supports all of the court's findings. Although the court stated that defendant's conduct justified an upward departure of eleven levels, only a five-level departure was necessary for the sentence the court imposed. Defendant's conduct warranted a five-level upward departure.
 
 E. Fourth Amendment Issues
 
 34
 Agents searched defendant's residence and bar pursuant to one search warrant. Defendant contends that the warrant affidavit did not establish probable cause to search these locations. We disagree. In reviewing the issuance of a search warrant, "this court pays 'great deference' to a magistrate's findings which 'should not be set aside unless arbitrarily exercised.' " United States v. Leake, 998 F.2d 1359, 1363 (6th Cir.1993). Here, Customs Agent Kenneth Smith submitted a fifteen-page affidavit which provided the magistrate judge with a substantial basis to conclude that probable cause existed to search the bar and residence.
 
 
 35
 Defendant next challenges the search of his car. When agents arrived to search defendant's residence, they found him in the driveway, seated in his Lincoln Continental. He concedes that he consented to a search of the vehicle, but argues that he consented to a search for weapons only. He contends that the agents improperly exceeded the scope of his consent by thoroughly searching the vehicle and its contents and seizing various documents. This argument fails. Even if the agents exceeded the scope of the consent, "a search warrant authorizing a search of particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises." United States v. Percival, 756 F.2d 600, 612 (7th Cir.1985); see also United States v. Gottschalk, 915 F.2d 1459, 1461 (10th Cir.1990) (collecting cases).
 
 
 36
 When the agents searched defendant's residence, they seized nine cassette tapes. Later, pursuant to a separate warrant, they listened to the tapes. Defendant now challenges both the seizure and playing of the tapes. His argument is without merit. He offers no specific reason why seizing the tapes was unconstitutional, and the warrant in support of listening to the tapes was plainly sufficient.
 
 
 37
 Defendant also challenges the government's execution of a forfeiture seizure warrant at a property he owned at 20014 Carol Street, and a comment he made in denying his consent to a search of that property. Defendant, however, does not dispute the government's assertion that it did not use any evidence seized from the Carol Street house, or the comment at trial. We will, therefore, not address this issue.
 
 F. Conflict of Interest
 
 38
 Defendant's final argument is that he was the victim of a conflict of interest in that his trial attorney, N.C. Deday Larene, had been indicted by the United States Attorney for the Eastern District of Michigan on federal tax charges before defendant's trial. However, the record establishes that defendant waived any objections to the possible conflict.
 
 
 39
 Before defendant's trial, the government filed a motion informing the district court of the potential conflict of interest. In response, defendant signed and filed a waiver which listed numerous potential problems posed by being represented by a lawyer under indictment, and waived any potential objection to the conflict of interest. Also before trial, defendant told the district court on the record that he wanted Larene to represent him despite Larene's indictment.
 
 
 40
 We do not address the issue of whether defendant received ineffective assistance of counsel. To the extent defendant wants to pursue that argument, a post-conviction proceeding under 28 U.S.C. Sec. 2255 is the appropriate forum. United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992).
 
 III.
 
 41
 Defendant's convictions and sentence are affirmed.
 
 
 
 [1]
 The indictment charged each structuring offense as both a racketeering act and a separate count