UNITED STATES of America, Plaintiff–Appellee,

v.

Willie F. CRITTON, Jr. (93–4391); Janet L. Livingston (93–4392); and Leslie E. Livingston (93–4393), Defendants–Appellants.

Nos. 93–4391 to 93–4393.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 1, 1994.

Decided Jan. 12, 1995.

Nancy A. Vecchiarelli, Asst. U.S. Atty., Office of the U.S. Atty., Cleveland, OH (argued and briefed), for U.S.

Debra M. Hughes, Federal Public Defender's Office, Cleveland, OH (argued and briefed), for Willie F. Critton, Jr.

John L. Wolfe, Akron, OH (argued and briefed), for Janet L. Livingston.

Janet L. Livingston, pro se.

Richard S. Kasay, Cuyahoga Falls, OH (argued and briefed), for Leslie E. Livingston.

Before: LIVELY, JONES, and DAUGHTREY, Circuit Judges.

LIVELY, Circuit Judge.

The three defendants, who were tried jointly, appeal their jury convictions for drug and related weapons offenses. One defendant, Willie Critton, also appeals his sentence. After consideration of the various arguments for reversal and a review of the record, we affirm.

## I.

### A.

In late 1992, Willie F. Critton, Janet L. Livingston—Critton's live-in companion and mother of his four children—and Janet's brother, Leslie E. Livingston, decided to take a trip to Florida. The stated purpose of the trip was to visit Critton's parents in Tampa. Because none of the defendants owned a serviceable automobile, they borrowed a van from Janet and Leslie's father.

The defendants stayed in Tampa for several days and then visited Miami. While in Tampa, the defendants all stayed in the same motel. On their first evening in Miami, Leslie Livingston stayed at a different motel than Willie Critton and Janet Livingston. Thereafter, the defendants again stayed at the same motel. While in Miami, Leslie Livingston and Critton sometimes spent the evening together, leaving Janet Livingston behind at the motel.

On December 13, 1993, as the defendants were returning to Ohio, they were stopped on northbound Interstate 77 by Ohio state highway patrolman Michael Harmon for speeding. The van was clocked at 75 m.p.h. in a 65 m.p.h. zone. When he approached the driver's side of the van, Trooper Harmon saw a large folding knife on the vehicle console toward the driver's side. He secured this knife, asked Willie Critton, the driver, to step out of the van, and then asked whether Critton had any other "illegal" weapons. Willie Critton said he had a knife in his pants pocket. The knife was an illegal knife/brass knuckles combination. After Trooper Harmon secured this, he asked whether Critton had any other illegal items on him. Willie Critton responded that he had a crack pipe in his sock. The trooper placed Critton in his cruiser, advised him of his *Miranda* rights and called for backup. After Trooper Brent Laner arrived as backup, the officers searched Willie Critton's wallet and found a marijuana cigarette butt and some rolling papers.

Trooper Harmon returned to the van and asked Leslie Livingston to get out of the vehicle. The officer patted Leslie Livingston down and placed him in a police cruiser. Next, Trooper Harmon asked Janet Livingston, who was sitting in the rear of the van with her four children, whether there were any other illegal weapons in the van. She told him she had a .38 caliber pistol in her purse that her father had given her for protection in Florida. The trooper searched the purse and also found a marijuana cigarette butt and a knife. Janet Livingston was arrested for carrying a concealed weapon, read her rights and placed in the cruiser. Leslie Livingston was also handcuffed at that time.

A few minutes later, a canine unit arrived. A preliminary search for weapons by the officers revealed a McDonald's bag located

on the floor of the front seat, which contained a .380 caliber handgun that Leslie Livingston later admitted he owned. The drug detection dog then alerted to three places in the van: a blue bag under the rear bench seat, the McDonald's bag in which the .380 caliber handgun was found, and the front of the van. Trooper Laner opened the blue bag and found inside approximately 420 grams of cocaine base (crack), 34 grams of marijuana separated in 38 manila packages, a beaker, razor blades and a toothbrush. The van was seized and towed.

The officers took the defendants to the Ohio State Patrol barracks and placed them in separate rooms. The officers removed several items from the van, including the blue bag, and placed them on a table in Leslie Livingston's room. Troopers Harmon and Laner then held a discussion in front of Leslie Livingston concerning who owned the bag. Livingston volunteered, "that's my bag. I bought it in Florida."

A search warrant was subsequently obtained for the rest of the van's contents. Among the items recovered was a microwave oven. Leslie and Janet Livingston claimed that the oven was used to cook food for Janet's children. The police, however, testified that they suspected it might have been used to convert cocaine powder into crack cocaine.

## B.

Willie Critton and Leslie Livingston were charged by the Ohio State Highway Patrol with possessing a controlled substance. Janet Livingston was charged with carrying a concealed weapon. These charges were dismissed when federal authorities brought charges against the defendants based on the same activity. The three were jointly indicted by a federal grand jury on three counts:

(1) Possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (aiding and abetting).

(2) Possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

(3) Using and carrying a firearm during a drug traffic offense, in violation of 18 U.S.C. § 924(c).

Each defendant filed a motion to suppress the fruits of the search of the blue bag, which had been searched without a warrant. The district court denied these motions following an evidentiary hearing. All three defendants were then found guilty on all three counts of the indictment. Janet Livingston was sentenced to 151 months imprisonment on Counts 1 and 2, to be served concurrently, and 60 months on Count 3, to be served consecutively, for a total of 211 months in prison. Willie Critton received a total of 228 months: 168 months on Counts 1 and 2, concurrently, and 60 months on Count 3, consecutively. Leslie Livingston's concurrent 235 month sentences on Counts 1 and 2 and 60 month consecutive sentence on Count 3 totalled 295 months.

## II.

Leslie and Janet Livingston contend that the district court erred in denying their motions to suppress evidence.

## A.

■ Leslie Livingston's motion in the district court sought to suppress physical evidence found in the blue bag solely on the ground that the stop of the van was unreasonable and pretextual. His motion also sought to suppress his statement that he owned the blue bag on the ground that the statement was obtained in violation of his *Miranda* rights. On appeal Leslie Livingston has abandoned these claims and argues for the first time that the statement should have been suppressed because it was the product of an illegal arrest without probable cause. This court has held that we have no jurisdiction to hear appeals of suppression issues raised for the first time on appeal. *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir.1990). Because a trial court has no obligation to suppress evidence sua sponte, *id.*, a defendant who fails to raise a specific issue as the basis for suppression "has waived the right to raise that issue on ap-

peal." *United States v. Yannott,* (6th Cir. 1994), 42 F.3d 999, 1005.

█ The defendant's only probable cause argument in the district court related to the stop of the van, an argument none of the defendants has made on appeal. Thus, Leslie Livingston's claim that his statement should have been suppressed as the product of an illegal arrest must be considered under the "plain error" provisions of Fed.R.Crim.P. 52(b). We consider a claim first raised on appeal only to correct errors that "are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936). As this court has stated the rule, "the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Cox,* 957 F.2d 264, 267 (6th Cir.1992) (quoting *United States v. Hook,* 781 F.2d 1166, 1172 (6th Cir.) (citations omitted), *cert. denied,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986)).

█ Leslie Livingston's claim concerning his statement that he owned the blue bag containing the narcotics does not meet this standard. He concedes that his statement was voluntary, but argues that it was "tainted" by his earlier illegal arrest. It is not at all clear that Leslie Livingston was arrested illegally. His detention was similar to the detention of one leaving a dwelling as officers approached it to execute a search warrant. The Supreme Court held that detention of a departing occupant while officers gained entrance was justified by "special law enforcement interests." *Michigan v. Summers,* 452 U.S. 692, 700, 101 S.Ct. 2587, 2593, 69 L.Ed.2d 340 (1981). More recently, the Supreme Court has applied the *Summers* opinion's reasoning to the detention of the driver of one vehicle for 30 to 40 minutes while officers investigated and ultimately searched an accompanying vehicle. *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). The Court treated the detention of the first driver as an investigative stop permitted by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and held that the first driver was not illegally arrested. Quoting its decision in *Summers,* the *Sharpe* Court stated:

> If the purpose underlying a *Terry* stop— investigating possible criminal activity—is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in *Terry* and *Adams* [*v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) ]. 452 U.S. at 700, n. 12 [101 S.Ct. at 2593, n. 12].

Citing *Sharpe,* this court has upheld the detention of a person attempting to enter a parked vehicle while the officers investigated to confirm their reasonable articulable suspicion that the vehicle was being used for drug trafficking. *United States v. Winfrey,* 915 F.2d 212 (6th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991). Although the detention constituted a seizure without probable cause, it did not violate the detainee's Fourth Amendment rights. The court stated that "a seizure under the fourth amendment need not necessarily be justified by probable cause. A temporary seizure may be justifiable if a reasonable articulable suspicion of criminal activity actually exists." *Id.* at 216 (citing *Terry,* 392 U.S. at 16–19, 88 S.Ct. at 1877–79). The officer who detained Leslie Livingston already had a reasonable articulable suspicion that the van was being used for criminal activity and all the occupants appeared to be engaged in that activity. Thus, his brief detention was not illegal. By the time the officers formally arrested Leslie Livingston they had probable cause based on the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983).

Be that as it may, Leslie Livingston was not even being interrogated at the time he made the statement; rather, he volunteered that he owned the bag even though the officers had not questioned him about its ownership. It is clear that admission of this statement did not lead to a miscarriage of justice.

### B.

Janet Livingston argues on appeal that the blue bag should not have been opened because it was a closed container and the ca-

nine signal did not justify opening it. Janet Livingston did not raise this issue in the district court. Thus, as with her brother's claim, we must consider this contention under the plain error rule. Again, this claim does not satisfy the standard for plain error.

■ Furthermore, we doubt that Janet Livingston had the required expectation of privacy to seek suppression of a container she denied owning. See *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980) (a person who has no legitimate expectation of privacy in a purse may not challenge a search of the purse); *United States v. Frazier*, 936 F.2d 262 (6th Cir.1991) (a defendant abandoned expectation of privacy in a bag he denied owning). Yet, even if Janet Livingston had the requisite expectation of privacy, under settled search and seizure law the officers in this case had authority to open and search the blue bag. The Supreme Court stated in *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982), "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." The defendants no longer dispute that the officers had probable cause to search the van, and the record discloses no circumstance that leads us to believe admission of the contents of the blue bag against Janet Livingston resulted in a miscarriage of justice.

### III.

All three defendants assert that their convictions were not supported by sufficient evidence. We apply the familiar test for sufficiency of the evidence: "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see also *United States v. Martin*, 897 F.2d 1368, 1373 (6th Cir.1990).

### A.

■ Janet Livingston argues that she was improperly convicted because insufficient evidence exists to show she violated 21 U.S.C. § 841(a)(1). To violate that section, a defendant must "knowingly or intentionally" distribute or dispense a controlled substance or "possess with intent to ... distribute, or dispense." "Knowledge or intent" refers to possession, not intent to distribute some time in the future. *United States v. Pope*, 561 F.2d 663, 670 (6th Cir.1977). No evidence, she claims, shows she had any such knowledge or intent. Ms. Livingston testified she first saw the blue bag in the highway patrol station, and Leslie Livingston admitted he owned the bag and testified that the drugs found in the bag did not belong to Janet. Therefore, she concludes, her conviction under this section must be reversed for insufficient evidence. Because she should not have been convicted under section 841(a)(1), she reasons, her conviction under 18 U.S.C. § 924(c) for using and carrying a firearm during a drug trafficking offense was also improper. We disagree.

■ The totality of the evidence at trial supported Janet Livingston's conviction under section 841(a)(1). The following facts support the jury verdict: Janet and Leslie Livingston borrowed the van from their parents; Janet helped drive to and from Florida; all three defendants stayed in the same hotels, save for one night; all three defendants helped load the van in Florida; Janet Livingston was sitting on the bench seat under which the drugs were found when Trooper Harmon stopped the van; she had the remains of a marijuana cigarette in her purse; the marijuana was divided into 38 individual packets, and the cocaine base weighed 420 grams, facts which suggest intent to distribute; and Janet Livingston first denied that the group had been to Miami, and when admitting it later said she had denied it because Miami is a drug source city. Janet Livingston was charged with aiding and abetting another who possessed drugs with intent to distribute as well as possessing them herself with that intent. The evidence cited above, along with other evidence heard by the jury, was clearly sufficient to form the basis for a rational jury's

finding of guilt either as a principal or an aider and abettor.

■ Janet Livingston also claims she did not have actual or constructive possession of the blue bag in which the drugs were found. Constructive possession requires that a person knowingly have power and intention to exercise control over an object. *United States v. Craven,* 478 F.2d 1329, 1333 (6th Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973). Although Janet Livingston claims no evidence indicates she had any right to exercise control over the blue bag, this is not true. The inside of the van was not compartmentalized, and was accessible to its inhabitants. Furthermore, Janet Livingston was seated on the rear bench seat, directly beneath which the blue bag was found. This, coupled with the evidence that she controlled the van and its contents, and knew drugs were in the van, indicates that she did, or at least could, exercise control over the bag.

■ Because her conviction under 21 U.S.C. § 841(a)(1) was based on sufficient evidence, her conviction and enhancement of sentence for possessing a firearm during the commission of a crime, in violation of 18 U.S.C. § 924(c), will be upheld as well. Ms. Livingston readily informed Trooper Harmon that she had a handgun in her purse. This demonstrates she knowingly possessed the handgun. The government need only prove some link between the possession of the firearm and the drug offense. See *United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.), *cert. denied,* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). This court construes the terms "use" and "carry" in the statute broadly: firearms are used or carried in relation to a drug trafficking crime so long as it reasonably appears that the weapons were in a defendant's actual or constructive possession and were used to protect the drugs or facilitate the transaction. *Id.; United States v. Henry,* 878 F.2d 937, 942 (6th Cir.1989). The jury could rationally infer from all the evidence that the purpose of the pistol in Janet Livingston's purse was to protect the drugs or facilitate a drug transaction.

**B.**

■ Leslie Livingston contends that, if his statement admitting ownership of the blue bag had been excluded, insufficient evidence would have existed to support his conviction. We have found, however, that this evidence was properly admitted. Even if his statement were excluded, however, the record would contain sufficient other evidence to uphold Leslie Livingston's convictions. He and his sister had borrowed the van from their parents, and he had helped drive the van during the defendants' trip to Florida. He owned the .380 caliber handgun found in the van and a loaded .22 caliber handgun found in a suitcase filled with men's clothing in the van. The drugs were found in a blue bag in the passenger compartment of the van. The defendants worked together to load these bags into the van when they left Florida. The record contains sufficient evidence for a rational trier of fact to have found him guilty beyond a reasonable doubt, even if his acknowledgement of ownership had been excluded.

**C.**

■ Willie Critton makes the same arguments as Janet Livingston regarding 21 U.S.C. § 841(a)(1), and we reach the same conclusion. There was sufficient evidence to convict him under that statute. Willie Critton also maintains that, even if his convictions under section 841(a)(1) are affirmed, his section 924(c) conviction should be reversed. He contends that, although a .22 caliber handgun was found in one of the suitcases, which was located in the passenger compartment of the van, no evidence directly links the handgun to him. Even assuming that he owned the weapon and constructively possessed it, he asserts, there was no proof he possessed it "during and in relation to" drug trafficking crimes.

■ This argument has no merit. In *Henry,* 878 F.2d at 944, this court applied the "fortress analogy" to hold a defendant responsible for firearms found in his house. Under the fortress analogy, "if it reasonably appears that firearms found on the premises controlled or owned by a defendant and in

his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then the firearms are used 'during and in relation' to a drug trafficking crime." *United States v. Head,* 927 F.2d 1361, 1366 (6th Cir.), *cert. denied,* 502 U.S. 846, 112 S.Ct. 144, 116 L.Ed.2d 110 (1991). *Henry* and *Head* indicate that section 924(c) convictions may be upheld if a firearm was readily accessible, even if not within immediate reach. This court is not alone in its treatment of section 924(c). See *United States v. Seals,* 987 F.2d 1102 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 155, 126 L.Ed.2d 116 (1993) (loaded rifle in trunk); *United States v. Castro–Lara,* 970 F.2d 976 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993) (unloaded handgun in briefcase in trunk); *United States v. Travis,* 993 F.2d 1316 (8th Cir.), *cert. denied,* —— U.S. ——, ——, 114 S.Ct. 229, 245, 126 L.Ed.2d 184, 198 (1993) (firearms locked in glove compartment of car defendant was driving).

We conclude that the direct evidence, together with reasonable inferences, was sufficient to support the jury verdicts finding all three defendants guilty of the offenses charged.

### IV.

■ Leslie and Janet Livingston claim reversible error in the district court's refusal to permit Leslie Livingston to testify about a conversation with Willie Critton in which Critton allegedly admitted that the drugs in the blue bag were his and that Janet Livingston knew nothing about them. The conversation took place as the defendants were returning to Ohio from Miami.

Willie Critton's attorney objected when Leslie Livingston's attorney asked Leslie on direct examination about the conversation. The court conducted a bench conference, at which Critton's lawyer argued that the conversation was "rank hearsay" and not within FED.R.EVID. 801(d)(2), which states that admissions by a party-opponent are not hearsay. When the district judge sustained Critton's objection, Leslie Livingston's attorney said, "Fine," and Janet Livingston's attorney said nothing. They appeared to acquiesce in the court's ruling and offered nothing further on the record.

When Leslie Livingston's attorney resumed direct examination of his client, the district court permitted Leslie Livingston to identify the bag, to say drugs were found in the bag, and to state that the bag was not his. We conclude that even if the district court erred in refusing to permit Leslie Livingston to recount Willie Critton's out-of-court admission, Leslie and Janet Livingston failed to preserve the issue for appellate review. Although FED.R.CRIM.P. 51 states that exceptions to rulings of the court are unnecessary, the rule requires a party in disagreement with the court's ruling to "make[ ] known to the court the action which that party desires the court to take . . . and the grounds therefor. . . ." Neither Leslie nor Janet Livingston's attorney disputed the court's ruling or offered any argument in support of the attempt to get Willie Critton's out-of-court statement before the jury. The only comment—"Fine"—gave the judge no reason to reconsider his ruling and offered no grounds in support of admitting the testimony.

In sum, we find no abuse of discretion in the district court's ruling, and conclude that it was not plain error under all the circumstances revealed by this record. One formulation of the plain error rule permits review "only on an appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it." *United States v. Hook,* 781 F.2d 1166, 1172 (6th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986) (quoting *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982)). That hardly describes the present case, in which defense counsel did not offer grounds for avoiding the ruling they now claim was error.

### V.

■ Although she did not make a motion for severance pursuant to FED.R.CRIM.P. 14, Janet Livingston contends she should have been tried separately from her codefendants. Rule 14 allows for severance "[i]f it appears that a defendant or the govern-

ment is prejudiced by a joinder of offenses or of defendants." If this occurs, "the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires." *Id.* A denial of severance, however, will only be overruled on appeal for clear abuse of discretion. *United States v. Causey,* 834 F.2d 1277, 1287 (6th Cir.1987), *cert. denied,* 486 U.S. 1034, 108 S.Ct. 2019, 100 L.Ed.2d 606 (1988). A strong policy presumption exists in favor of joint trials when charges will be proved by the same evidence and result from the same acts. See *United States v. Hamilton,* 689 F.2d 1262, 1275 (6th Cir.1982), *cert. denied,* 459 U.S. 1117, 103 S.Ct. 753, 754, 74 L.Ed.2d 971 (1983). The mere fact that codefendants will present antagonistic defenses does not mandate severance: severance is justified only if presentation of these defenses in the same trial will mislead or confuse the jury. *United States v. Vinson,* 606 F.2d 149, 154 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *Causey,* 834 F.2d at 1287. Thus, Janet Livingston faces a strict standard.

Janet Livingston's claim differs from most severance claims in that she first presents this argument on appeal. In *United States v. Vida,* 370 F.2d 759, 765 (1966), *cert. denied,* 387 U.S. 910, 87 S.Ct. 1695, 18 L.Ed.2d 630 (1967), this court faced this same issue: whether the district court should have granted severance sua sponte. The *Vida* court employed the same standard of review in that case—abuse of discretion—as it would have had the defendant made a motion for severance. Employing this standard, the court declined to reverse: even if the defendant had made a motion for severance, it would have been denied. Therefore, it was reasonable to deny Vida's claim that the trial court should have granted a severance sua sponte.

■ We reach the same conclusion in this case. The charges against Janet Livingston were proved by the same evidence and resulted from the same facts as the charges against Willie Critton and Leslie Livingston. It is unlikely that joinder confused the jury, since the cases against the defendants arose

from the same facts. It does not appear that Janet Livingston was prejudiced by the joinder. The evidence that was excluded as a result of the combined trial—Willie Critton's alleged statements to Leslie Livingston—is only one piece of evidence out of many. As we noted in discussing her claim of insufficiency of evidence, many other facts in this case incriminated Janet Livingston. In light of all the evidence, we conclude that the trial court did not abuse its discretion by failing to order a separate trial for Janet Livingston sua sponte. The evidence strongly supported the government's claim that the three defendants engaged in a joint undertaking that included possession of illegal drugs with intent to distribute and carrying weapons in relation to this crime.

## VI.

The district court sentenced the defendants under United States Sentencing Guidelines (U.S.S.G.) § 1B1.3. Using this guideline, the district court set Willie Critton's offense level at 34. Critton contends this was error.

■ This court reviews the factual findings of a district court regarding the amount of drugs for which a defendant is held accountable only for clear error. *United States v. Ferguson,* 23 F.3d 135, 141–42 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 259, 130 L.Ed.2d 179 (1994); *United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). Findings on which the sentence is based need only be supported by a preponderance of the evidence. *Walton,* 908 F.2d at 1301.

■ U.S.S.G. § 1B1.3(a)(1)(B), under which Willie Critton's offense level was determined, states, "in the case of a jointly undertaken criminal activity (a criminal plan ... undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity" shall be used to determine the base offense level and adjustments. An application note explains that a defendant is accountable for the con-

duct of others that was both "(i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3, Application Note 2. Thus, section 1B1.3 consists of two prongs: relevant conduct and reasonable foreseeability. If insufficient evidence exists concerning either scope of the activity or foreseeability, remand is required. See *United States v. Blankenship*, 954 F.2d 1224, 1228 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 288, 121 L.Ed.2d 213 (1992) (an essential element of relevant conduct is whether a defendant knew or should have known the amount of drugs possessed by a codefendant); see also *United States v. Moss*, 9 F.3d 543, 553 (6th Cir.1993).

Sufficient evidence exists in this case to satisfy these two requirements and support an offense level of 34. First, Willie Critton and his codefendants acted together. Each defendant is therefore responsible for the entire amount of drugs. Because the defendants acted jointly, their actions were also foreseeable to Willie Critton. The defendants' concerted actions make Critton responsible for all the drugs in the van, and make the findings upon which his sentence was based not clearly erroneous.

Willie Critton also argues, however, that his sentence was clearly erroneous because the district court made no specific findings concerning relevant conduct or foreseeability. In the sentencing hearing, the court stated:

> Counsel for Mr. Critton particularly makes the valid point that there are steps in the analysis which the Court should and must follow in relation to cases which have some shadow relationship to this one.... To the degree that it is necessary to do so, the Court has a difficulty from the evidence in making some of the findings that it is suggested are necessary. (Sentencing Hearing Tr. at 18–19).

This statement indicates the court was aware of section 1B1.3's requirements. Although the court expressed "difficulty" in making these findings, it appears that the court satisfied section 1B1.3's twin requirements in this case:

> Whatever the *conduct* of each of the Livingstons and Mr. Critton was, I think it was fairly set forth in the evidence. That activity was in furtherance of the jointly undertaken criminal activity, and that the activities which took place were *reasonably foreseeable* in connection with that activity.
>
> . . . .
>
> ... [The evidence] disclose[s] clearly three people who were in possession of the material in question; that they were transporting the material; that they and each of them were equipped with weapons in relation to the transportation.
>
> ... Each of the defendants then in my view is obviously responsible for his or her acts, and all of the acts in which he or her [sic] aided and abetted the others in performing. (Sentencing Hearing Tr. at 19–20) (emphasis added).

When considered in light of the probation officer's presentence investigation report, it is clear that the district court made the required findings. The report is very specific concerning the amount of drugs found in the van and the joint nature of the defendants' undertakings on the trip to and from Florida. The district court made a specific finding that 420 grams of cocaine base and 34 grams of marijuana were recovered from the van. The court also found that each of the defendants' conduct was in furtherance of the jointly undertaken criminal activity and that "the activities which took place were reasonably foreseeable in connection with that activity." *Id.* at 18–20.

We have examined Willie Critton's remaining arguments related to his sentence and find the authorities cited to be inapposite.

We **AFFIRM** the convictions and sentences of the three defendants.