83 F.3d 423
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Glen Thomas PAYTON, Defendant-Appellant.
 No. 95-5621.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1996.
 
 Before: LIVELY, MARTIN and MOORE, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 A jury found the defendant Glen T. Payton guilty of manufacturing, growing and producing marijuana and of possessing marijuana with the intent to distribute it. See 21 U.S.C. §§ 812 and 841(a)(1) (1988). The defendant makes three arguments for reversal. Upon consideration of the record on appeal together with the briefs and oral arguments of counsel, we conclude that no reversible error occurred and, accordingly, we affirm the judgment of conviction. The defendant does not appeal his sentence.
 
 I.
 
 2
 Acting on a tip, on October 1, 1993, two Kentucky State Police officers went to a farm in Henry County, Kentucky, where Glen Payton and other members of the Payton family resided. Their purpose was to determine whether marijuana was being grown on the farm, as had been reported to them. Soon after arriving at the Payton farm the officers discovered a plot of marijuana that was fenced off in a wooded area. There was a rototiller sitting beside the fence, and the marijuana had been cultivated.
 
 
 3
 As the officers left the marijuana patch they saw an automobile approaching from the back of the farm, and they concealed themselves. Two men got out of the car and walked to the marijuana patch that the officers had just left. One of these individuals was the defendant.
 
 
 4
 After about ten minutes the two men walked back from the marijuana patch to their car. One of the officers testified that he was close enough to the two men as they passed him to hear their conversation. One of the men asked the other how long he thought it would be "before it will be ready." The officer was not sure which of the two men, Glen Payton or his companion, asked the question, and could not understand the response. The two men then drove directly to the residence on the farm.
 
 
 5
 After the men drove away the officers followed the dirt farm road on which the two men had traveled in coming to the marijuana patch. One officer testified that as they followed the road to the rear of the farm he could see the fresh tracks made by the automobile in which Glen Payton had ridden. When the officers reached a ridge where the tracks led them, they found another plot of marijuana in a wooded area. This plot was fenced off and tended in the same way as the first one.
 
 
 6
 There were no other crops on the farm about which the men might have been talking when one questioned the other about when "it" would be ready. The only farming activity being carried on, other than raising marijuana, was grazing cattle. In elaborating on the condition of the marijuana, another officer who viewed the plots testified that the plants were well cared for, there were no weeds and the ground had been cultivated prior to transplanting. The ground had been chopped up and had the same consistency as that produced by a rototiller.
 
 
 7
 Ten days after the officers discovered the marijuana and observed Glen Payton entering and leaving the first marijuana patch, a Kentucky State Police detective confronted the defendant. After advising Mr. Payton of his Miranda rights the detective asked the defendant what he knew about the marijuana. Glen Payton responded that he had "[n]o knowledge whatsoever" about marijuana growing on the farm and could offer no assistance with regard to how the marijuana got on the farm.
 
 II.
 
 8
 The case went to trial and after the government rested, the defendant made a motion for acquittal under FED.R.CRIM.P. 29. Following oral argument by counsel, the trial judge denied the motion. While acknowledging that the government had presented a "thin" case, the court stated that the evidence was sufficient to take the case to the jury.
 
 
 9
 In his oral ruling, the district judge emphasized the fact that nothing was growing on the farm that would be subject to harvesting except marijuana. The court noted that each plot had been well-tended and fenced in with barbed wire apparently to keep the cattle from getting in and eating or destroying the plants. In addition, one of the officers had testified that he saw the defendant enter and leave the first marijuana plot; yet the defendant denied that he knew of its existence. The court also concluded that the number of plants found growing on the farm was evidence that the marijuana was intended for sale or distribution, not for personal use. Later, the court filed a written memorandum opinion and order reiterating its reasons for denying the motion for acquittal and also denying the defendant's motion for a new trial.
 
 III.
 
 10
 On appeal the defendant argues that the evidence was insufficient to support the jury's finding of guilt beyond a reasonable doubt. At oral argument defense counsel made much of the fact that the evidence indicated just as strongly that some other person who resided on the farm might have been growing the marijuana as that Glen Payton was the party responsible for its being there.
 
 
 11
 The conviction in this case was based on circumstantial evidence. There is no requirement in such a case that the government must rule out every reasonable hypothesis except that of guilt. United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984). If the evidence is sufficient to support a finding that the defendant committed the charged offense, it is immaterial that the evidence might be construed also to implicate other uncharged persons.
 
 
 12
 Most of the cases relied on by the defendant are "mere presence" or "mere proximity" cases, where the prosecution proved nothing except that the defendant was present at the time and location of an illegal act. The defendant places principal reliance on our decision in United States v. White, 932 F.2d 588 (6th Cir.1991). In White, a police officer found marijuana growing three feet from White's trailer home. White did not own the property on which the marijuana was growing. There were two other residences on each side of the trailer within 100 feet. Id. at 589. White, who was partially disabled with a bad back and arm, acknowledged that he was aware of the marijuana, but denied that he had anything to do with it. The prosecution produced no evidence other than the presence of the marijuana close to the defendant's home, but on land owned by another, to link him to the plants. This court reversed White's conviction, finding the evidence of guilt insufficient. Id. at 590.
 
 
 13
 The defendant's reliance on White and similar cases is misplaced. In the present case the government proved much more than mere proximity or presence. One of the officers testified that he saw Glen Payton enter and leave one marijuana patch, and heard a discussion between the defendant and another person as they were leaving the patch about when the crop would be ready for harvesting. Also, a witness who had worked at the time repairing the farm residence testified that the defendant visited the farm daily during the cultivating season. Furthermore, the evidence indicated that Glen Payton and his companion had come from another plot of marijuana at the rear of the farm immediately prior to inspecting the patch that the police had under surveillance. Both plots of marijuana that the officers examined on October 1st, as well as four others discovered later, were concealed within wooded areas and fenced off with barbed wire. As the district court pointed out, there were no other crops growing on the farm, and the only purpose of fencing the marijuana plots was to keep cattle out.
 
 
 14
 Finally, despite the fact that two officers had seen Glen Payton enter and leave one marijuana patch, when asked, the defendant denied knowing that marijuana was growing on the farm and stated that he had no information which could assist the police in their investigation.
 
 
 15
 The prosecution presented a significant amount of evidence linking Glen Payton to the marijuana and his false exculpatory statement added weight to their case. The prosecution in this case satisfied the requirement that, when viewed in the light most favorable to the prosecution, the evidence was such that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 III.
 
 16
 The remaining issues require little discussion.
 
 A.
 
 17
 The defendant argues that the prosecutor made an unwarranted prejudicial argument in telling the jury that it need not concern itself with the punishment, "if any," that might be imposed on Glen Payton if the jury found him guilty. The defendant contends that this comment, repeated several times by the prosecution, was confusing and might have misled the jury to believe Mr. Payton would suffer no consequences if found guilty. As the court pointed out in its memorandum denying a new trial, when defense counsel objected to this statement, the judge advised the jury that determination of the sentence in the event of a guilty verdict was the duty of the court and that the jury was not to consider punishment in reaching its verdict. This instruction was clearly correct. Nevertheless, the defendant argues that the "if any" portion of the argument was an inaccurate statement of the law that tended to diminish the jury's sense of responsibility. We disagree.
 
 
 18
 The trial judge had instructed the jury at the outset that it was concerned only with determination of guilt or innocence. When the court repeated this statement in its admonition following the defendant's objection, the defendant requested nothing further. There was no reversible error.
 
 B.
 
 19
 Finally, the defendant maintains that the trial court committed error by submitting both counts to the jury, inasmuch as both the charge of growing the marijuana and of possessing it with intent to distribute arose out of the same acts. This argument is foreclosed by our decision in United States v. Miller, 870 F.2d 1067 (6th Cir.1989), where we stated: "[W]e find that the manufacture of marijuana and the possession with intent to distribute marijuana are 'two statutory offenses [that] may be punished cumulatively,' ... as each offense 'requires proof of a fact which the other does not.' " Id. at 1071 (citations omitted).
 
 
 20
 The judgment of the district court is AFFIRMED.
 
 
 21
 MOORE, Circuit Judge, dissenting.
 
 
 22
 Because I believe that the evidence in this case was insufficient to prove beyond a reasonable doubt that Glen Payton committed either of the crimes with which he was charged, I would reverse the district court's denial of the motion for acquittal and vacate Payton's convictions.
 
 
 23
 * The evidence that incriminates Payton is essentially twofold. First, Kentucky State Trooper Bobby Downey testified that he observed Payton and a companion drive from the back of the farm on which he lived to a patch of woods that concealed a well-tended, fenced plot of marijuana. Downey overheard one of the individuals ask the other about when "it will be ready," but he could not hear the reply. After they left, Downey followed their car tracks toward the back of the farm and discovered another marijuana plot. Second, Kentucky State Detective Carey Duncan testified that at the time of his arrest Payton denied knowing anything about marijuana growing on the property.
 
 
 24
 What is remarkable about this case is not the evidence that the prosecution did introduce, but the evidence that it did not. Downey could not say which of the individuals asked the question, and the police never identified Payton's companion. Ten days of constant surveillance following Downey's observations failed to catch Payton anywhere near the plots. Someone who manufactured and sold marijuana would presumably have the necessary supplies to do so, yet the government produced no drug-related equipment or supplies linked to Payton. Moreover, undisputed evidence showed that one of Payton's brothers owned the farm and that at least four adult family members lived there. The brother who owned the farm was identified as the purchaser of a rototiller that was found at one of the marijuana plots and that was apparently used to till the soil in which the plants grew. In contrast, Payton was never seen near the rototiller; the gardening he did do took place near the house rather than near any of the marijuana plots.
 
 II
 
 25
 The majority concludes that this evidence, when viewed in the light most favorable to the prosecution, see Jackson v. Virginia, 443 U.S. 307, 319 (1979), permits a jury to conclude beyond a reasonable doubt that Payton possessed the marijuana and intended to distribute it under 21 U.S.C. § 841(a)(1). The complete absence of evidence that Payton himself ever actually possessed marijuana means that the prosecution's case rested on a theory of constructive possession. The issue is therefore whether the evidence, viewed in the light most favorable to the government, established beyond a reasonable doubt that Payton "knowingly ha[d] power and intention to exercise control" over the marijuana in question. See United States v. Critton, 43 F.3d 1089, 1096 (6th Cir.), cert. denied, 115 S.Ct. 1987, 2004 (1995). Furthermore, in order to support a conviction, possession of a controlled substance must be both knowing and intentional. See 21 U.S.C. § 841(a).
 
 
 26
 Downey's testimony established no more than that Payton fraternized with a possibly suspicious character and understood that marijuana was growing on the property. If Downey had identified Payton's companion as the one who asked the question, then the jury might have had a reason to conclude that Payton was somehow "in charge" of the marijuana. The evidence that was actually introduced, however, constitutes only proof of knowledge of marijuana grown on the plot. It does not show any illicit intent, desire, or power to control the contraband. Payton's false exculpatory statement does not alter this conclusion; it does not indicate that the marijuana was his, any more than his presence in the wooded area did. His dishonesty certainly evidences a desire to mislead the police, but the possibility that he was concealing the illegal activity of a family member, rather than his own, preserves a reasonable doubt concerning his culpability for the crime of possession of marijuana with intent to distribute.
 
 
 27
 In short, Payton was convicted because he knew that marijuana was being grown on the farm and because he "advised [police] that he was not aware that marijuana was growing on the farm property" and provided "no information to assist in determining how the marijuana got on the farm." Duncan Test., Trial Tr. at 120-21. From such evidence it is likely that someone who lived on or owned the farm constructively possessed the drugs, but Glen Payton could not be singled out beyond a reasonable doubt as possessing the marijuana with intent to distribute it. His conduct might comprise misprision of a felony, see 18 U.S.C. § 4,[1] but he was not charged with or convicted of misprision. Nor was he charged with or convicted of any crime involving joint participation in an offense, such as conspiring with, aiding, or abetting another to possess with intent to distribute a controlled substance. See id. § 2; 21 U.S.C. § 846. He was convicted of possessing marijuana with intent to distribute. Section 841(a)(1) is not a vehicle for penalizing those who simply lie to police or who merely know of illegal drug cultivation on a farm where they live but which they do not own.
 
 III
 
 28
 The majority also finds the evidence sufficient to sustain Payton's conviction for knowing and intentional manufacture of marijuana in violation of 21 U.S.C. § 841(a)(1). This holding is even more dubious than the first, because there is no broad concept like "constructive possession" to aid the prosecution on the manufacture count. Viewing the evidence in the light most favorable to the prosecution, the jury could conclude that Payton knew about the marijuana plots and that someone in the house was likely to be cultivating marijuana, but this does not meet the prosecution's burden of proving knowing and intentional manufacture of marijuana by Glen Payton. In fact, one of the two individuals that Downey observed at the marijuana plot was apparently ignorant of the cultivation process because he asked when "it will be ready." Because the jury had no evidence that Payton was not the one who asked the question, it could not conclude beyond a reasonable doubt that he was responsible for the cultivation.
 
 
 29
 Furthermore, nothing connected Payton with the rototiller, the one instrument of cultivation that was found at the crime scene. Payton was merely observed doing some gardening near the house, far away from the marijuana plots, and was never observed using the rototiller. The jury could not reasonably ignore this evidence, especially in light of the fact that one of Payton's brothers had purchased the rototiller. This was the same brother who owned the farm, and he was therefore a likely candidate both for constructive possession of the marijuana and for cultivation. Under such circumstances, Payton's conviction for manufacture of a controlled substance cannot stand.
 
 IV
 
 30
 Affirming Payton's convictions invests juries and prosecutors with a power beyond that which Congress intended here. Knowledge of the existence of cultivated marijuana, and false statements to police about that knowledge, cannot alone suffice to sustain a conviction for possession with intent to distribute or for manufacture of a controlled substance. Prosecutors and courts must respect the statutory framework created by Congress, which establishes different crimes with different requirements for proof and penalties. Under the circumstances of this case, the prosecution failed to meet its burden of introducing evidence showing beyond a reasonable doubt that Payton committed the particular crimes with which he was charged. Irrespective of whether he committed other crimes, his convictions for manufacture of and possession with intent to distribute marijuana cannot be sustained. I respectfully dissent.
 
 
 
 [1]
 18 U.S.C. § 4 provides:
 Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.