NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  05a0652n.06
Filed:  August 3, 2005

No. 04-5872

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

UNITED STATES of AMERICA,

      Plaintiff-Appellee,

v.

RONNIE THOMAS,

      Defendant-Appellant.

_____/

|  |  |
|---|---|
|  | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |

**Before:  BATCHELDER and COLE, Circuit Judges; REEVES, District Judge.**[*]

      **DANNY C. REEVES, District Judge.**  Defendant-Appellant Ronnie Thomas appeals the district court's denial of his motion to suppress.  Following the denial of this motion, Thomas entered into a plea agreement with the United States.  The United States dismissed one count of the indictment and Thomas pled guilty to the remaining count, alleging that he was guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  In entering his guilty plea, Thomas reserved the right to appeal the district court's decision on his motion to suppress. For the reasons that follow, we **AFFIRM** the denial of the defendant's motion.

**BACKGROUND**

---

[*] The Honorable Danny C. Reeves, United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

-1-

On May 21, 2002, Officers Daryl Dyson and Lanece Stepney of the Memphis Police Department responded to a call of "shots fired." The suspect was described as a black male wearing a blue hat and blue shirt. Upon their arrival at the scene, the officers observed a black male, later identified as Thomas, fitting the description of the suspect. Initially, Thomas walked towards them, but then turned and walked in the opposite direction. The officers observed Thomas make a "throwing motion" and saw a "metallic, grayish, shiny type of object" being thrown. Officer Dyson also heard a "loud thud" from a nearby wooden fence. He later testified that he suspected that the thrown object was a weapon.

The officers detained Thomas for further investigation. Officer Stepney patted-down Thomas and discovered three bullets in his pocket. Thomas was placed in a squad car, although he was not handcuffed. The officers testified that he was not free to leave the car. While Officer Stepney searched for the gun, Thomas volunteered to Officer Dyson that he was "being set up" and the "gun is not mine." In addition to denying ownership, Thomas also stated that he was trying to get the gun out of the house and away from his girlfriend. While still at the scene, Officer Stepney recovered the weapon. Although no *Miranda* warnings had been given at this point, Officer Dyson then asked Thomas whether he had a permit for the weapon. Thomas responded in the negative.

On February 18, 2003, a federal grand jury returned a two-count indictment against Thomas, charging him with being a felon in possession of a weapon and ammunition. Thomas filed a motion to suppress evidence. A hearing was held before the magistrate judge on June 19,

2003. After hearing testimony from Officer Dyson, Officer Stepney, and Thomas, the magistrate judge recommended that the motion be denied. And after conducting a *de novo* review, the district court adopted the magistrate judge's findings of fact and conclusions of law.

On March 26, 2004, Thomas pled guilty to count one and the United States dismissed count two. Thomas reserved his right to appeal the suppression issue. On July 14, 2004, he was sentenced to 57 months imprisonment.

## STANDARD OF REVIEW

This Court reviews factual findings relating to a suppression motion for clear error and conclusions of law *de novo*. *United States v. Bailey*, 302 F.3d 652, 656 (6th Cir. 2002).

## DISCUSSION

A.     *Frisk*

Thomas argues that the arresting officers did not have a reasonable basis to frisk him. "A stop for questioning is reasonable if the police officer is 'able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion' as measured by an objective standard." *United States v. Vite-Espinoza*, 342 F.3d 462, 466 (6th Cir. 2003) (quoting *Terry v. Ohio,* 392 U.S. 1 (1968)). If the officer is "justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others," the officer may conduct a limited search for weapons which might be used to harm the officer or members of the public. *Terry*, 392 U.S. at 26-27.

Thomas claims that the officers had no reason to believe he might be armed, because they observed him throwing an object that *appeared* to be a gun. Of course, the fact that Thomas threw one gun did not rule out the possibility that he had additional weapons on his person. Likewise, during their initial observations, it is rational to conclude that the officers did not determine with certainty that the thrown object actually was a gun, as opposed to some other object or weapon. These facts are relevant because "[w]hen assessing whether an individual is 'armed and dangerous' the focus of the judicial inquiry is whether the officer reasonably perceived the subject of a frisk as potentially dangerous, not whether he 'had an indication' that the defendant was in fact armed." *United States v. Bell*, 762 F.2d 495, 500 (6th Cir. 1985) (citation omitted). In the present case, the officers were responding to a "shots fired" call. Upon arriving at the scene, they discovered a person matching the description of the suspect. Further, upon observing the officers, Thomas turned to walk away and threw an object toward a fence. Before the "object" was recovered, it was objectively reasonable for the officers to conclude that Thomas posed a risk to themselves or others, requiring limited frisking, questioning, and detention.

B.      *Ammunition*

Thomas also claims that the officers "exceeded the scope of the *Terry* frisk by seizing from the defendant's pocket what . . . appeared to feel like a bullet." As the government points out, however, Thomas did not make this argument in his motion to suppress or in his objections to the magistrate's report. A review of the record supports this conclusion. Accordingly,

Thomas has waived this argument. *United States v. Critton*, 43 F.3d 1089, 1093 (6th Cir. 1995);

*United States v. Yannott*, 42 F.3d 999, 1005 (6th Cir. 1994); *United States v. Crimson*, 905 F.2d

966, 969 (6th Cir. 1990).

> This Court will:
>
> consider a claim first raised on appeal only to correct errors that "are obvious, or if they otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Atkinson,* 297 U.S. 157, 160 (1936). As this court has stated the rule, "the plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice." *United States v. Cox,* 957 F.2d 264, 267 (6th Cir. 1992) (quoting *United States v. Hook,* 781 F.2d 1166, 1172 (6th Cir.) (citations omitted), *cert. denied,* 479 U.S. 882 (1986)).

*Critton*, 43 F.3d at 1094. Under the facts presented, Thomas' claim is without merit.

An officer may seize contraband discovered during a lawful frisk or pat down, even without a warrant. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Here, the discovery of this ammunition helped attenuate "the extraordinary risks to which law enforcement officials are exposed during investigatory detentions," which provides a large part of the justification for permitting *Terry* stops. *United States v. Swann*, 149 F.3d 271, 274 (4th Cir. 1998). Further, the officers clearly had probable cause to believe that the bullets were related to criminal activity. Finally, the bullets would have been discovered incident to Thomas' later arrest. In short, Thomas' claim regarding the bullets does not affect the fairness, integrity, or reputation of his proceedings.

C.      *Statements While Detained*

Finally, Thomas asserts that the district court erred by failing to suppress the statements made while he was detained by the police. These statements include: (1) Thomas' assertion that "the gun is not mine" and that he was "being set up", (2) his statement that he was trying to get "the gun" out of the house and away from his girlfriend, and (3) his response that he did not have a permit for the weapon. The first two responses were volunteered by Thomas. Thus, any argument that these statements were obtained in violation of *Miranda* is clearly misplaced. The magistrate judge properly concluded that statements volunteered by Thomas were not the result of the "functional equivalent of [police] questioning." And, because the *Terry* stop, frisking, and brief questioning were permissible, that evidence cannot be considered the "fruit of an unlawful seizure."

A different analysis is required regarding the third statement which was in direct response to a question by Officer Dyson. During a *Terry* stop, officers are permitted to ask a detainee a moderate number of questions to determine the person's identity and to try to obtain information confirming or dispelling their suspicions. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Thomas maintains that the question presented regarding the gun permit occurred in circumstances tantamount to a formal arrest and, therefore, required a recitation of *Miranda* rights.

This Court has instructed that:

> [t]he very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights. Therefore, the pertinent question is whether [the suspect] was "in custody" during the investigatory

> detention for the purposes of determining whether his Fifth Amendment rights were violated.
>
> In determining whether a defendant was subject to custodial interrogation we look to the totality of the circumstances "to determine 'how a reasonable man in the suspect's position would have understood the situation.'" The "ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

*United States v. Swanson*, 341 F.3d 524, 528-29 (6th Cir. 2003) (citations omitted). Relevant considerations include: (1) the purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as whether the suspect was informed at the time that the questioning was voluntary or that the suspect was free to leave or to request the officers to do so; whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police or acquiesced to their requests to answer some questions. *Id.* at 529.

Here, the purpose of the police questioning, *i.e.*, to determine whether Thomas had a gun permit, was benign and unintrusive. Regarding the second factor, Thomas was questioned in a police car, on a public street, and without handcuffs. The Supreme Court has not required *Miranda* warnings in similar settings. *See California v. Beheler*, 463 U.S. 1121, 1125-26 (1983) (detainee not "in custody" although questioning took place in a police station); *Oregon v. Mathiason*, 429 U.S. 492, 495-96 (1977) (questioning at state police offices behind closed doors not a custodial interrogation where defendant was informed he was not under arrest and was

allowed to leave at the conclusion of the interview).  In addition, the police questioning was extremely brief.

Finally, the magistrate judge did not find any other factors impacting the voluntariness of Thomas' answers.  Considering all of the above factors, we conclude that the district court was correct in determining that the police officers' brief questioning did not rise to the level of "custodial interrogation" and did not require *Miranda* warnings.  While Thomas may not have been free to leave the squad car, "the very nature of a *Terry* stop means that a detainee is not free to leave during the investigation, yet is not entitled to *Miranda* rights."  *Swanson*, 341 F.3d at 528.

## CONCLUSION

We **AFFIRM** the decision of the district court.